By the Court. Woodruff, J.—1.
The first ground upon which the appellant herein insists that the judgment should be reversed is, that there is a defect of parties.
This objection is urged in two forms: first, that Edward E. Marvine is a necessary party to the action, if, in fact, the plaintiffs have any interest entitling them to prosecute; and second, that Marvine is the real and only party in interest, and therefore the plaintiffs are not entitled to prosecute or recover, whatever may be the merits of the controversy.
The provisions of the Code, in relation to the manner in which a defendant must avail himself of the objection that some other person should be made a party, are so explicit, that there is no room for discussion thereon. By section 148, it is expressly provided, that if that objection be not taken, either by answer or demurrer, the defendant shall be deemed to have waived the same; and therefore, if it had appeared on the trial that Marvine had an interest in' the controversy, the defendant, by waiving the objection, is to be taken to assent to the prosecution by the plaintiffs without Marvine’s presence as a party. (5 Duer, 168.)
It is, however, suggested, that under the provisions of section 122 of the' Code, the Court, notwithstanding such waiver of the objection, has the power, and that, in this case, it was its duty to cause such party to be brought in. The clause of the section referred to is this:—“ The Court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the Court must cause them to be brought in.”
It should be noticed here, that the inquiry is, whether the *273 rights of the absent party will be prejudiced, and not whether the rights of the party before the Court, who has waived the objection, will be prejudiced. By not raising the objection, he has assented to the proceeding, so far as his own rights may be affected by it.
It is, then, we think’quite obvious, that if Marvine, the assignor of the plaintiffs, has, by assignment with all needful powers, invested the plaintiffs with authority to prosecute this action on his behalf, as well as their own, then he will be bound by their acts done in pursuance of their powers—this suit will be his suit; his rights are protected by the parties whom he has selected and appointed to protect them, and in the very manner he has sought redress, and the judgment may, and ought to bind him. If he has given no such authority, and has not in any manner assented to, nor sanctioned their prosecution, then he cannot be prejudiced by a suit to which he is neither a party nor privy. In either aspect, hisrights cannot be prejudiced.
But there is, we think, upon the case as it is presented, no ground for saying, that either the rights of Marvine or the rights of the defendant can sustain any prejudice. (Grinnell v. Schmidt, 2 Sandf. S. C. Rep. 706.) The plaintiffs hold an actual assignment, absolute in form, with full power and authority to collect and enforce the claim in controversy.
Under such an assignment, if the defendant had paid the amount due, to them, he would be fully protected, and if Marvine have any interest, under a secret trust, or under any understanding with the plaintiffs that the assignment is in truth only made to provide for the payment of advances made to or for him, it is only a right existing between him and them, to call them to account.
As already observed, the assignment to the plaintiffs is absolute in form, and, without attempting to recapitulate the evidence, we observe, that there was nothing developed on the trial showing, or in any manner indicating that the judgment will not be an effectual bar to any prosecution of the defendant by Marvine, or that Marvine has any rights which can be prejudiced by a complete determination of the controversy between the parties before the Court. And upon the proofs now before us, he would be held bound by what the plaintiffs do, in pursuance of his assignment, which, in terms, transfers the whole claim. Section 122 has, we think, no application to such a case; there was, therefore, no rea *274 son why the Court should, of its own motion, order Marvine to be brought in as a party.
And we may add, as to this branch of the subject, besides the waiver of the defendant by not taking the objection by answer, that it was not taken on the trial. It cannot be first raised on appeal.
The second branch of the objection is, that the suit is not brought in the name of the real party in interest. That Marvine is the real and only party. This averment is contained in the answer. It presents two inquiries; first, whether (assuming the claim to be assignable in its nature) the plaintiffs have any interest therein ? and, second, whether it is so assignable ?
Upon the question of fact, we perceive no ground for the suggestion, that they are not the immediate, and, according to the proofs in the cause, the only parties in interest. The present claim appears to have been asserted as early as the 27th of November, 1849. Marvine then made an absolute and unqualified transfer of the claim to the plaintiffs, and there is no evidence that such transfer was not as absolute, in fact, as its terms import. It is, however, claimed, that the complaint, in substance, avers that it . was made as security for advances, and that the proofs show that the advances have been already repaid. We do not think the complaint must necessarily be regarded as containing such an admission: it is true, that it states the fact that the plaintiffs did make advances to Marvine, for the original adventure, in the fall of 1848, and that Marvine agreed at that time to pledge to them his interest in the adventure; and it is then averred, that'in November, 1849, he sold, assigned, and transferred to the plaintiffs all the claims and demands he had or might or could have against the defendant, for the moneys and property obtained from him by the defendant, .and for moneys received or due and owing, and for any false and fraudulent representation or deceit. But if this part of the complaint can be taken fairly to import that such transfer was only as a pledge in performance of the agreement made in 1848, still the plaintiffs are real parties in interest, unless it was shown, that the advances were repaid. This was not shown. We find no evidence proving such repayment, and the only evidence to which, our attention was called, relied upon by the defendant, is the account showing the respective proportions *275 of the parties in the net proceeds, of the adventure, received from California. But this account was between the three, and only showed such proportions, and how much the defendant had received, and how much the plaintiffs had received. It does not state how much Marvine owed the plaintiffs, nor that any of these moneys were paid over to Marvine, so as to raise any presumption that the advances had already been satisfied. Nor even that the state of the accounts, between Marvine and the plaintiffs, was such that the plaintiffs, by retaining Marvine’s share of those proceeds, realized full payment. We need hardly add, that the plaintiffs having shown Marvine’s assignment, the burden of proving his averment, that they were not the real and only parties in interest, was upon the defendant. He should make that proof reasonably satisfactory, without leaving it to rest upon conjecture; else the referees were bound to find the fact against him. We are clear that there is nothing to warrant us in regarding the finding which they did make, as against the evidence.
If, then, the present claim is, in its nature, assignable, the whole objection must be overruled.
We do not hesitate to say, that the claim is assignable.
It is an action to recover for an excess of money paid, and property sold and conveyed to the defendant himself, by the assignor of the plaintiffs, which was not legally due to him; and the allegations of misrepresentation and overcharge are made for the purpose of avoiding what would otherwise be the effect of the written contract, and of the settlement made between the parties, upon the basis of that contract. But for the writing, which Marvine (the assignor of the plaintiffs) was induced to sign, and the subsequent settlement of the account, and so long as the transaction rested upon the actual bargain between them, the right of the assignor to proceed as for so much money due to him, from the defendant, upon contract, would not have been open to discussion or doubt. That bargain provided, first, for a sale, to Marvine, of one-half of the barque John W. Cater, “at the cost price thereof, which the defendant had paid therefor and, had that price not been fixed by the written paper, it is obvious, that in any subsequent settlement of the transaction, such actual cost, and that only, would have been the subject of charge to the plaintiffs’ assignor (Marvine).
*276 It is found by the referees, that, by the defendant’s misrepresentations respecting the actual cost of the barque, Marvine was induced to allow and pay a much larger sum than such actual cost, and to settle the account of the joint adventure, subsequently stated, between them. It is true, that payment was made, in part, by the conveyance of property; but that does not alter the right of the party in this case. The sum to be paid was agreed upon, and such property was taken in payment of that amount, and for the purposes of the agreement, as cash. The purchase, and the other provisions of the bargain between the parties, contemplated a joint adventure, at the equal expense, and for the equal profit of the parties, in which the defendant should sell to Marvine one half of the vessel, at the price or rate which he paid for her, and to which the parties should farther contribute certain equal amounts for outfit and cargo.
Had the written paper not been signed, and the state of the accounts had been open to adjustment, the whole resting in the actual parol agreement, the case would have been one of mutual dealing between the parties, lying wholly in contract, in which moneys had been paid and property transferred which was the proper .subject of an accounting between them. And, after a settlement, if it appeared that, either by mistake or through misrepresentation, the one or the other had received a greater sum than was justly due or payable to him, the excess would have been clearly recoverable ; it would have been so much money due to the other in respect of the contract between the parties; due because of the contract, and in virtue of the rights which resulted from the contract; allegation and proof of the misrepresentation therefore became material in the present case not as the foundation or ground of the claim of Marvine to the moneys sought to be recovered, but as a means of avoiding the effect of the writing and the settlement which the parties made, so far, and so far only as they would, but for the alleged misrepresentation, have precluded inquiry into the actual state of the dealings between the parties.
In this aspect of the case,' (and the finding of the referees in their statement of facts is in accordance with this view,) the claim assigned is a money demand founded on the actual contract between the original parties to the transaction, and as truly assignable as the interest of a partner in the accounts of a firm. If the *277 settlement of those accounts does not conclude the partner himself, by reason of any mistake, fraud or misrepresentation by means of which it was effected, it in nowise renders the claim to recover for moneys paid, or moneys unjustly retained, or property sold and delivered, under the influence of such mistake or misrepresentation, less assignable than any other demand. (5 Duer, 254.)
The only part of the claim in this action which it seems to us can be plausibly asserted to lie in tort is that which relates to the over-charge for the vessel. We are not able to perceive that he who agrees to sell property at its cost, and then, by way of fixing the amount which is payable, states that cost untruly, and thereby obtains more money or more property, (conveyed and accepted in lieu of money) than is due to him, is not liable as for so much money had and received to the use of the deceived party. This involves no rescission of the contract; it is the enforcement of the actual agreement of the parties, and requires only the restitution of the excess unlawfully obtained.
The case of McKee v. Judd, (2 Kern. 622) does not, we think, warrant the defendant’s claim that such a cause of action is not assignable, but rather the contrary. It is there held, by the Court of Appeals, that an action for the unlawful detention and conversion of goods is assignable.
In Zabriskie v. Smith (3 Kern. 322) it has since been held, by the Court of Appeals, that a right of action for damages, caused by a false and fraudulent representation of the solvency of the vendee of merchandise, (a third person,) upon faith whereof the assignor of the plaintiff sold and delivered goods to such third person, is not assignable. This and the cases cited to us fall far short of holding that if one himself obtain for his own use, either the money or property of another, by misrepresentation or fraud, the claim to recover the same, or the value thereof; is not assignable. Still less do they apply to, the present case as .found by the referees herein.
If, as is intimated by Mr. Justice Denio in the case last referred to, in approval of the observation of Lord Abinger (in Raymond v. Fitch, 2 Cr. Mees. & Ros., 588,) “the power to assign and to transmit to personal representatives are convertible propositions,” although such power to transmit to representatives be derived *278 from a statute, there would seem no room to doubt the assign-ability of the whole cause of action. We think this is clear, independent of any statute; but if otherwise, the provisions of our statute, (2 Rev. Stat. 447, § 1,) appear to cover the claim. By this it is provided that for wrongs done to the property, rights or interests of another for which an action might be maintained, etc., such action may be brought after the death of the person injured by his executors or administrators in the same manner and with the like effect in all respects as actions founded upon contracts. The exceptions to this broad enactment are specified in the second section, and they are actions for injuries to the person and no others.
We, however, do not rest upon this view of the subject, and are not prepared to say, whenever it is provided by statute, that an action which could not heretofore be maintained by an executor or administrator shall survive to him, that such cause of action becomes thereby assignable.
H. The next point urged upon our attention is, that the referees erred in receiving the deposition of B. H. Folger in evidence.
When the deposition was offered in evidence, the defendant’s counsel “ objected to its admissibility,” and the case states that the question was reserved by the referees. This was on the 18th of March, 1853. Ho ruling was had upon this offer, and the trial was adjourned. On the 5th of May, the trial was continued, and again adjourned. On the 10th of May, 1853, the plaintiff’s counsel again offered the deposition in evidence. The defendant’s counsel then objected “to its admissibility, on the grounds that the evidence of the witness’s inability to attend is insufficient; that the witness had been here since the trial commenced, and that the certificate is not according to the statute.”
The trial commenced on the 18th December, 1851. On the 18th of March, 1853, the son of the deponent testified that the deponent lived in Buffalo, that he was in this city in April, 1852, to be a witness in this case; that he was then in feeble health, and was detained by sickness at Utica, on his journey home. And that he- was here again in September, 1852, in the hope it would be of service to his health. That he returned home much weaker, and since, has been unable to make a journey. That his complaint is consumption. That when the son left Buffalo, about a *279 week prior to his testifying, the deponent was very feeble—unable to get out of the house, not able to sit up all day; “we scarcely expect him to live from week to week.” And he gave other testimony in relation to the period, during which he had been in a condition too feeble to admit of a journey.
It seems to us, that this testimony was quite sufficient to show that the deponent was unable to attend on the trial, when the testimony was given. And that in the absence of any evidence of a change in the condition of the deponent, it carried with it the almost necessary conclusion, from the nature, extent, and duration of his illness, that he was unable to attend on the 10th of May, when the deposition was finally offered and received.
Indeed, this branch of the objection was not insisted upon, on the argument of the appeal. Nor was it urged that the fact, that in an earlier stage of the trial, the witness had been in this city, made any difference. It is quite obvious, that when a trial is protracted, as was the trial of this action, for more than four years, (from Dec. 18, 1851, to Feb. 13, 1856) by causes which we may assume to have been either sufficient in themselves, or so regarded by the parties, all the witnesses, on either side, could not be examined in any one day, or in any particular week. Nor can we say that a party was bound to alter his order of proof, or call first those witnesses who were sick, or who might be unable to attend at a future day. And it is not less obvious, that during so protracted a trial, witnesses would probably change their residence, some become ill, and some probably die. The parties undoubtedly were exposed to some hazard of losing their testimony , altogether, but if, notwithstanding the delay, the testimony could, in a subsequent stage of the trial, be procured in a legal form, we do not think it should be wholly excluded, because the party, had he known which of his witnesses could, and which could not, continue their attendance to the end of the trial, might have examined the latter at the earliest opportunity.
The other objection is, to the sufficiency of the certificate. The supposed defect does not appear to have been pointed out on the trial; but, on the appeal, it is suggested that the officer before whom it was taken, although he has certified that it was read to the witness, does not certify that it was “ carefully” read to him. (2 Rev. Stat. 399, § 47 [37]).
*280 We are of opinion, that in what relates to the mere mode of taking the deposition, and the conduct of the officer therein, it is to be presumed, when he certifies to the fact of taking, that his duty was performed in obedience to the statute. The same section of the statute which directs that the deposition be carefully read to the witness, also requires that the officer insert therein every answer or declaration of the witness, etc. It has not, so far as we have known, been the practice to certify that this was done. Nor do we deem it necessary so to certify. The omission to insert such answers would be ground for a motion to suppress the deposition. It will be presumed that the officer did insert such answers, etc., until the contrary appears. So, we apprehend, it may be presumed that the deposition, when read to the witness, was carefully read. This is presuming very little in favor of a sworn public officer. And so much, at least, we think should be presumed, if, indeed, it is necessary for the officer to certify any thing more than that the deposition was taken before him.
How far it is to be deemed the duty of the party to be affected by a deposition of this description, to move to suppress the deposition, if he desires to avail himself of objections which could be obviated, either by a correction of the alleged defects, or by a reexamination of the witness, we do not think it necessary to decide. (19 Wend. 437; 5 Duer, 100.) The general rule, in relation to such defects in depositions taken de bene esse, has, in this court, been repeatedly stated to require, that the objection be taken by motion to suppress the deposition.
We might dispose of this point by adding, that these were the only grounds of objection to the deposition, stated on the trial. (5 Sandf. 191; 1 E. D. Smith, 70; Id. 549.) No other questions were raised before the referees, or passed upon. But on the argument of the appeal, three other objections were taken to the deposition, and here taken for the first time.
Without conceding that objections not specifically stated below, can be raised here, we observe, the objections that the deposition was taken under an order of a Judge of the Supreme Court, and before a County Judge in Erie County, are, we think, groundless.
These objections were urged, under an assumption that the deposition was taken pursuant to article 1st of title 3, chap. 7, part 3d of the Rev. Statutes (2 R. S. 391). “ Of taking condi *281 tionally, the testimony of witnesses in this State,” which authorizes the taking by, and under an order of a Judge of the court in which the suit is pending.
The deposition was, in truth, taken under the fifth article of the title above mentioned (2 R. S. 398). “ Of proceedings to perpetuate testimony.” This title authorizes any person, who is a party to a suit pending in any court of this State, or who expects to be a party, etc., to apply (among other officers) to any Justice of the Supreme Court, or to the First Judge of the county courts of any county, for an order for the taking of the. deposition of any witness who is material, etc. And such officer shall appoint a place, within the county, where such witness resides, and a time, etc., for the examination of such witness. And by § 51 [41] he may order such examination to be had before any other officer, to whom such application might have been originally made, residing in the same county with the witness.
These provisions plainly authorized Mr. Justice Edwards of the Supreme Court to make the order for examination. And they authorized him to direct, that such examination be had before the County Judge of Erie County, in which county the witness resided, if the application might have been originally made to such County Judge.
Section 29 of the Act in relation to the Judiciary, passed May 12, 1847, (L. of 1847, ch. 280, p. 319,) provides, in relation to County Judges, elected under our present Constitution, that, in their respective counties, they shall have power to perform all the duties and do all..the acts now required to be done and performed by the Judges of the county courts, (when not holding county courts,) or any one or more of them, at Chambers, or otherwise, so far as those acts and duties are consistent with the Constitution and the provisions of this Act; and by § 36, all laws relating to the present Courts of Common Pleas, and the officers thereof, and their powers and duties, shall be applicable to the county courts of the respective counties, and the officers thereof, and their powers and duties, etc.
. The First Judge of the County Court was a Judge of the Court of Common Pleas for the county, prior to the new Constitution. (2 Rev. Stat. 208, § 2.)
*282 By the statute above recited, the County Judge succeeded to the powers of the First Judge of the County Courts.
Such First Judge had power to make the order for the examination of a witness, under the statute in question; and a Judge of the Supreme Court might direct the examination of a witness to be had before the First Judge of the county in which the witness resided.
It follows, that the order of Mr: Justice Edwards, directing the examination of the witness to be had before the County Judge of Erie County, was a proper order.
There was.no necessity for entitling the affidavits, upon which the order was made in the Supreme Court, nor do we think it was proper to do so. But it will be perceived, that the affidavit of the plaintiff states correctly the suit which was pending, in which the testimony was material, and describes it as a suit in this Court. This was all that was necessary. The attorney may have supposed, that, because the order was to be granted by a Judge of the Supreme Court, it was proper to entitle the affidavits and order, of the Court, in which such officer was Judge. This was, we think, mere surplusage. The Court and the cause, in which, in fact, the testimony was to be used, were correctly described, and no other entitling was required. So, as to the deposition; its caption describes it as taken in pursuance of the order annexed. And that was, in like manner, all that was necessary, and all that was of any manner of importance.
It is hardly necessary to say, of the objection that much of the testimony of Folger was hearsay—that it was not objected to on the trial. We cannot say, that the defendant’s counsel did not prefer to have these portions of the deposition read; at all events, by not making the objection there, he waived it. It cannot be, for the first time, raised on the appeal.
IH. As to the admission of Roland Gelston’s deposition, it must suffice to say, that it was not objected to; and if there was any well-founded objection, that, also, was waived. (2 E. D. Smith, 350.)
IV. As to A, K. Marvine’s deposition, it appears, that it was taken, by consent, before one of the referees. When it was offered, no specific objection was pointed out. The defendant’s counsel objected, generally, to its admissibility. No illegality, in *283 the form or manner of taking-the deposition, was suggested. No claim was made, that the absence of the witness was not sufficiently proved.
It is now objected, that the deposition was not properly certified; and second, that there was not sufficient proof of the absence of the witness or of his inability to attend.
A brief notice of the circumstances, under which the deposition was offered and received, will show, we think, that the case is one, which conclusively illustrates the rule, that a party should state his objection specifically, so that the adverse party may have the opportunity to obviate the objection, or cure the defect; otherwise, such objection shall not be permitted, to avail on appeal. Good faith between parties and counsel requires, that such objections should be specifically pointed out.
At the hearing of the cause, on the 16th of March, the plaintiff examined a witness, to prove, preliminarily, the absence of the deponent, A. K. Marvine.
He proved, that the deponent was the travelling agent of the assignees of H. T. Lathrop & Co.; that he was absent from the State, in Columbus, Georgia, or Montgomery, Alabama; that the last letter received from him, by the witness, was from Columbus, dated 5th March; that the witness was the book-keeper of the said assignees; that he did not know when Marvine would be back; that he was expected back at some time; that he (the witness) should think Mr. Marvine ought to be back in a month or six weeks, but that he had said nothing in his letter about returning.
Upon this testimony, -the plaintiffs offered the deposition in evidence, and the defendant objected. Upon what'ground, it does not. appear. We think the absence of the witness fully proved. Nor is it even now urged, that, had the deposition been read, at that time, this point would have been doubtful.
But the referees adjourned pending the question, before any argument thereupon. The question does not appear to have been further agitated, until the meeting of the referees, on the 23d of May, when the offer of the deposition was renewed, and the objection was overruled, and the deposition was read.
No ground of objection was then stated. Had it been intimated, that the proof of continued absence ought to be brought *284 down to that time, there would have been an opportunity for the plaintiff to recall his witness, and show, that Marvine had not yet returned. But no intimation was given, that any change had occurred in the circumstances, which could or ought to affect the decision of the referees upon the question, which had been so long pending; nor that it was the duty of the plaintiffs to prove, that no change had occurred. Indeed, the parties and the referees, all appear to have treated the matter, as standing upon the same footing as when the question first arose.
In Fry v. Bennett, (4 Duer, 252,) to which we are referred, the specific objection, that the absence of the witness was not sufficiently proved, was taken, and ruled upon distinctly; and that case does not, therefore, meet the present point, nor sustain it.
To permit the defendant, now, for the first time, to raise the objection, that the deponent might have returned between the time when his deposition was first offered, and the time when it was received, would be unfair to the plaintiffs—would encourage a practice tending to entrap the adverse party, and to mislead the referees into error; and the objection cannot be permitted to prevail. (5 Sandf. 191.)
The other objection, to wit, that the deposition is not properly certified, must be disposed of upon similar grounds. It was not 'stated at the trial. If it had been, it could, and undoubtedly would have been immediately cured, by a proper certificate.
The deposition itself was taken, during the trial of the cause, informally, by consent, before one of the referees, instead of the three; and, having been so taken, it was offered to be read in the hearing of the three referees, at a subsequent meeting. It was taken in the presence of the counsel, for both of the parties, by question and answer, on full examination and cross-examination, occupying three days. They, as well as the referee taking it, were, therefore, fully cognizant of the facts, and had it been suggested that a formal certificate was wanting, such referee could instantly have given it. To allow such an objection to be now, for the first time, successfully urged, would be, we think, doing violence to the intention of the parties—sustaining an objection never in fact made, nor intended to be made, at the trial—one upon which the referees have never passed—and one which, if sustained, would encourage a practice of keeping back objections *285 which might readily be obviated at the trial, and so enable a party to speculate upon the result of such trial, with a design (if such result be adverse,) to spring upon his adversary an objection, not meritorious in itself, and involve him in all th.e vexation and expense of further litigation.
As to the suggestion, that some portions of Marvine’s testimony was hearsay, it is sufficient to say, as we have said, in regard to Folger’s testimony, that, as defendant did not object to the reading of these portions of the deposition, we may properly asssume, that he preferred to have them read; indeed some of those portions to which our attention is now called, are in the cross examination of the witness by the defendant’s counsel. At all events, this objection, not being raised at the trial, was waived. (See, also, in reference to this deposition, 19 Wend, 437; 5 Duer, 100.)
V. In regard to the re-examination of witnesses after they have left the stand, it is hardly necessary to say, that it was purely discretionary with the referees; and, the exercise of that discretion can only be reviewed here, if at all, when it plainly appears that it was abused, to the defendant’s prejudice. (6 Wend. 281; 19 lb. 578 ; 1 E. D. Smith, 78; lb. 543.) If, when recalled, the evidence proposed was irrelevant or incompetent, it should have been objected to.
VI. Parol evidence was given of the contents of what purported to be a letter. It had been shown, that the defendant had had in his possession such a paper, and had exhibited it to the witness: notice had been given to the defendant’s attorneys to produce it on the trial. We perceive no ground for saying that parol evidence was not thereby made competent.
VII. It is also urged upon us, that the referees improperly received evidence of the cost of a house in Murray street, which the plaintiff’s assignor sold to the defendant, and which the defendant had accepted in part payment for the vessel which was the subject of dispute.
The admissibility of this evidence, we think, appears, from a review of the manner in which the question arose. The defendant, by his answer, charged, that E. E. Marvine (the plaintiffs’ assignor,) had, in relation to this house, practised a fraud upon the defendant, to induce him to accept the lease in payment, by representing that it was worth ten thousand dollars; .. . that it was *286 very valuable, etc. That such representations were false, and made with intent to deceive and defraud the defendant. On the trial, the defendant examined numerous witnesses, to prove the value ■ of the house and lease, (the latter having over twenty-three years to run, without ground rent,) in 1848, when the contract between the parties was made. The estimate of the witnesses varied, from $3500 to $10,000. Several valued the property at $4000—seve-ral at $5000, and some higher. On the cross-examination, it appeared that some of the witnesses, in their estimate, paid little, if any, regard to the house; others knew nothing of the amount of rent derivable therefrom; one, at least, regarded the house as an old house.
The defendant does not appear, by his answer, to have pointed his charges of fraud, in this respect, to any particular relief, or to have made any counter-claim, founded upon a fraudulent overvaluation. But the referees thought proper to permit the defendant to go into this proof; and he opened the subject, by the testimony of witnesses, as above stated.
It was, therefore, clearly open to explanation and rebuttal. With this view, the plaintiff examined several witnesses, who estimated the value of the property at $10,000 and $11,000—includ-ing, of course, the whole unexpired term of the lease.
In this conflict of evidence, and when some one of the defendant’s witnesses had estimated the whole as low as $3500, it was, we think, by no means incompetent nor irrelevant, to call the mechanics who. built the house, and show that the house was built only three years before the sale—that the carpenter’s and mason’s work cost over three thousand dollars, and. the whole building cost thirty-five hundred dollars. Upon a question of' fraud, and where the estimates of value ranged so widely, surely this evidence might properly be taken, to fortify the testimony of the witnesses for the plaintiff, and show that the witnesses who had set so low an estimate upon the value of the house and term of the lease, were unreliable; and, still more clearly, to repel the charge of fraudulent over-valuation.*
VIII. So in relation to the value of the vessel, the one-half of which was sold to the plaintiffs’ assignor. The defendant had alleged, and endeavored to prove her value in the market to be as *287 great, and even much greater than the sum at which the sale was made. It was competent for the plaintiff (if the question of value was open) to rebut this proof. He sought to do so by inquiring her value of a competent witness. His answer was:—“ Her value in the market in 1848 was, that if she had been put up at auction, she might have brought three thousand dollars.”
The answer was objected to.
It is undoubtedly true, that an auction sale is not the only mode of testing the market value of property, but it is a very common mode of sale, and we cannot close our eyes to the fact, that immense amounts of property, real and personal, are disposed of daily in that very mode. Indeed, there is some reason in saying, that in an open market, with free competition, on a voluntary sale, that mode would furnish the most satisfactory test of market value. We are clear, that it is some evidence, and in its nature is "competent and proper to be weighed by a jury or referees. The defendant’s counsel themselves, acted upon this view of the subject. The very witnesses whom they examined to show the value of the house and lease before referred to, were four real-estate auctioneers. As to property commonly sold at auction, and having reference to sales made by voluntary consent of the owner, and with a view to produce the highest price, in the absence of circumstances tending to prevent that result, such a sale would be very strong evidence of true market value.
The answer of the witness cannot be understood to have reference to forced sales, or sales made against the will of the owner, under circumstances which require or show an actual and peremptory sale, without regard to the probable result upon the owner’s interest. Proof of the result of such a sale may be very properly rejected when offered to contradict (as it sometimes is, in actions of trespass or trover) the testimony of witnesses to the fair market value.
IX. We find, in relation to the alleged inadmissibility of an entry which was offered in evidence from the books of the Astor House, that it appears to have been offered for the purpose of showing that the plaintiffs’ assignor, Edw. E. Marvine, arrived in this city on the 25th of October, 1848. It was shown, that the entry was in the handwriting of Mr. Coleman, who kept the books, and that Coleman was, at the time of the trial, in the State of Tennessee, having been absent eight months. The entry being *288 offered, was objected to, and the counsel for the respective parties then made the following stipulation:—“ It is agreed, by counsel, that the entry shall be considered proven, as stated, and if admissible, shall be received when passed upon by the referees, and that the counsel for the defendant have his proper exceptions to the entry.”
We do not deem it necessary to inquire, whether the evidence was competent or not. The plaintiffs do not appear to have afterwards called for any ruling on the subject. It does not appear whether the referees deemed the evidence admissible or not; nor whether they received it as evidence. We- have, therefore, no ruling, and no exception to review.
The practice of inserting evidence in a case, as taken subject to objection to be afterwards considered and ruled upon, necessarily devolves upon him, who would insist upon the matter as evidence in the cause, the duty of obtaining a ruling upon the subject in some stage of the trial, and there is no ground for exception, nor, indeed, any cause of complaint by the other party until'such ruling has been had. (5 Duer, 219.)
If the referees had rejected the evidence, the plaintiff, in the present case, would have had his opportunity to except. If they received it, the defendant would have had the same opportunity. But it is no ground for reversing the judgment that they did not decide the question at all, because the parties stipulated that it be considered proved thus provisionally, and never afterwards sought any ruling. It does not appear, that it was, in fact, received at all. Whether the referees would have received the evidence, or rejected it, we cannot say. If we are to presume any thing in relation to it, we should presume that they would have decided according to law. And in the absence of any ruling declaring it admissible, it must be treated, as not in fact in evidence. Indeed, we see no propriety in inserting the matter in the case.
X. What has already been said in relation to a supposed defect of parties, and on the subject of the assignability of the cause of action, seems to us, to dispose of the motion made on the trial to dismiss the complaint.
Indeed, the sole ground then stated, was, that the cause of action was not assignable. We have stated our views upon that point; indeed, as to any portion of the claim, except what related *289 to the over-charge for the vessel, we do not perceive that it has any plausible foundation.
On the argument of the appeal, the omission to make Edw. E. Marvine the plaintiffs’ assignor, a party, is insisted upon, and it is insisted, that he was not only a necessary party, but that he was, in fact, the only party in interest.
We have already said, that defect of parties must be taken advantage of by demurrer or answer, and when the objection is not taken in that mode, and much more, when, besides that omission, it is not even suggested on the trial, it is to be deemed waived. And in regard to the objection which was taken by answer, that Marvine was the only real party in interest, we have said all that we deem necessary. The plaintiffs were parties in interest, and prima facie sole parties in interest, the burden of proving the allegation of the answer was cast on the defendant.
XI. It is also now, for the first time, insisted that certain material facts were not proved, and that the complaint ought to have been dismissed upon that ground. As to this, it would suffice to say, that where no such ground of dismissal is stated at the trial, the whole evidence in the case is to be taken into view. The omission to take the objection when the plaintiff rests, is a virtual submission of the case to the referees upon the whole evidence, and the only inquiry, thereafter, is, Have the referees, in their report, found the facts either without evidence, or so clearly against the weight of the evidence, that their report, (it being for this purpose regarded as a verdict of a jury,) should be set aside on that ground ?
XII. This brings us to say, (without attempting, under color of giving reasons for our conclusion, to detail the evidence and sub-, ject it in its various aspects, and in its bearing upon the rights and conduct of the parties, to extended comment,) that we cannot find reason to declare the findings of the referees unsupported by the testimony and proofs given on the trial. -
We have given to the whole evidence a full, and, we think, a careful and thorough scrutiny. We have been greatly aided in this by the full analysis, and by the astute and critical examination of details, furnished us by the defendant’s counsel, and the able argument presented at the hearing, with the points then submitted.
We need hardly say, that we are not at liberty to treat this *290 branch of the case, as if the issues were now open to us for trial and determination, according to conclusions which our own minds might form, in the first instance, were we sitting ourselves either as jurors or referees. Quite otherwise. The question for us is; was there any evidence to sustain the finding of facts ? or, is such evidence so overcome, as to create a preponderance so clearly and decidedly in favor of the defendant, as to warrant us in disregard ing the conclusions at which the referees have arrived; whose especial province it was to determine the facts; who had the witnesses before them, and who may be regarded as having been appointed, because it was peculiarly fit and proper, that the matters of fact in dispute should be left to their determination ? (5 Duer, 216.)
To the question thus stated, we are constrained to answer in the negative. And this answer disposes of most of the further details, which are pressed upon our attention, and which are, in truth,'only particulars, under the more general claim to relief, on the ground last stated.
In thus stating the question, which is properly before us, and our conclusion thereon, we are not to be understood as intimating, that, had the broad question, presented by the pleadings, been before us, our conclusions of fact would have been less favorable to the plaintiffs, than those of the referees. But we state the true question before us, and our whole duty is discharged, by a correct decision of that question.
XIII. It is, however, proper to notice the point insisted upon, that the referees have not in terms found that the misrepresentations and over-charges, which they do find to have been made, were fraudulent.
We think, on this subject, that, although they have not made use of the word fraud, or fraudulent, the facts which they do find, in their necessary legal effect, for all the purposes of the relief sought, constitute fraud. We think, also, that the facts found entitle the plaintiff to the relief granted, even if they can be reconciled with the absence of a fraudulent intent, in the mind of the defendant.
And, moreover, that, (sitting, as we are, in a court of equity, as well as of law,) if it be assumed, that the various misstatements and over-charges found by the referees were mistakes only, the *291 plaintiff would be entitled to the same relief, which the referees have awarded.
Some other points remain, however, to be considered.
XIV. It is objected, that the referees have allowed, in the account of over-charges, one which was not particularly specified in the complaint, to wit: On the bill of goods, purchased by the defendant from John Thursby, for the cargo of the vessel sent to California, on joint account of the defendant and Marvine, and for which he paid (as appears by the testimony of John B. Thursby) $888.17, but which was charged in the accounts at $1000.67.
The objection is not, that this over-charge was not proved; but that, it not having been specifically mentioned in the complaint, it ought not to be allowed.
Obviously, if this objection were well founded, it could only render it necessary, that the plaintiff should submit to a correction of the judgment in this respect, if he so elected, without going to a new trial. But we are of opinion, that the objection is not well founded.
1. The complaint does not purport to specify all of the false charges, either for outfit or cargo.
It charges the fact, that false charges were made, and specifies several, which have been discovered since the accounts were rendered to the plaintiff’s assignor, which, the complaint states, are among the false representations, etc., made by the defendant.
2. The evidence, in relation to the over-charge referred to, was received without objection; and the over-charge was fully proved. Falling, as it did, within the actual charges made in the pleadings, it having been made the subject of examination and proof, without objection, and having been established, it was so far from erroneous to allow it, that we think it would have been erroneous, as well as unjust, to reject it.
3. The allowance of this item does not increase the recovery beyond the amount claimed; on the contrary, the report is for a less sum than the amount prayed in the complaint.
XV. In regard to the alleged settlement between the parties, we think, that the testimony on this subject, if credited by the referees, might properly have been regarded as strong evidence, in favor of the defendant, of the true amount, at that time, due to Marvine, in rectification of the account of the outfit and cargo; *292 though this was subject to large abatement, from the weight of the testimony, since the defendant (by his sworn answer) and his sole witness (his former clerk) differ materially as to that amount. And the defendant ought not to complain, if, in reference to the sum claimed to have been tendered, he is held to the truth of his own answer.
But it is only as such evidence, that we think the referees had a right to regard the testimony on the subject.
It was not conclusive; the discovery and proof of other errors and over-charges, not embraced within such modified account, would overcome it.
As a bar to further inquiry, it was ineffectual. The matter, viewed as an accord, was in fieri; it did not amount to a binding contract. Some of its provisions remained to be settled, and even reduced to writing. Hiving full weight to all the testimony of Dudley, it amounted to nothing more than an admission by Mar-vine. " As an accord, it was incomplete; and, before it was acted upon, Marvine declined a settlement.
The referees have found, that no sufficient tender was proven to have been made, at any time, respecting the subject matter of this action.
Whether the referees discredited the witness who testifies in relation to the offer of the money to Marvine, either because the sworn answer of the defendant does not correspond with the evidence, or because they had not confidence in the truth of the witness ; or whether they regarded the tender as insufficient, because it is set up as a compromise, merely, which the plaintiffs’ assignor was at liberty to reject, until the whole arrangement should be fully agreed upon, so that there was, in fact, no final accord, of the performance of which any tender could be alleged; or whether they simply intended, that no tender could be deemed sufficient, in bar of the action, that was not followed, in pleading, by an averment of readiness, etc., and a bringing of the money into Court, does not clearly appear. In either aspect, we think they ruled correctly.
XVI. It is further insisted on the part of the defendant that the referees erred in not allowing certain items to the defendant in respect to which some evidence was taken under objections by the plaintiffs’ counsel, and which evidence was held inadmissible *293 and rejected because no set-off or counter-claim, was contained in the defendant’s answer, and the pleadings contained no issue in respect thereto.
These items consist of an amount alleged to have been paid by the defendant in January, 1849, for a gold tester; certain two notes alleged to have been paid by the defendant for Marvine ; moneys paid by the defendant to one Carmack, claimed to have been paid for his services or expenses in relation to the joint adventure after January, 1849; an alleged erroneous charge to the defendant for compensation of one of the supercargoes, contained in the account of H. Sheldon & Co., of the returns of the adventure on the final distribution of the net proceeds in January, 1850; and a charge to the defendant in the same account for insurance on the return of the proceeds of the adventure.
If we were at liberty to test the ruling of the referees by inquiring whether these items should have been allowed to the defendant upon the proofs in the cause, irrespective of the state of the pleadings, we think there is no doubt that these items should be rejected with the possible exception of $5.50 for the cost of the gold tester, in respect to which there may be some doubt, whether it was not purchased in the exercise of a reasonable discretion, though without any express authority or sanction from Marvine, and yet the proof does not appear to show that it was used for the joint benefit, nor what ultimate disposition was made of it.
But the referees have not passed upon the merits of the defendant’s claims in these particulars, and we are therefore to consider the question as though the evidence in relation thereto might, if not rejected, have influenced their determination upon the facts so as to have affected the balance found due from the defendant. The ruling of the referees in truth was a rejection of the evidence on the ground that the plaintiffs’ claim to these allowances was not warranted by the pleadings.
The answer does not in terms claim or demand any allowance as a set-off or counter-claim. Nevertheless, if it states any facts which would, if proved, entitle him thereto, the omission of a formal claim to set off the same, or abate from the claim of the plaintiff, ought not to preclude him.
*294 The only parts of the answer which it is contended by the defendant’s counsel may embrace these items, are two:—•
In one part of the answer which relates exclusively to the allegations of the complaint, that the accounts rendered by the defendant of his purchases for the cargo of the vessel were false and untrue, the defendant says, “ in reference to the purchases for the said cargo and the accounts rendered thereof,” that, an invoice was made and delivered to Marvine by a clerk of the defendant without his knowledge; that no bills were shown, etc.; he then explains the invoice, and says it was not an account as between him and Marvine nor ever pretended so to be, and that Marvine took the invoice and made up the account, from the same himself without any consultation with the defendant, and the answer then adds, “ that the account so made up by Marvine omits many credits to which this defendant is legally entitled, and the errors in the same are in Marvine’s favor. That it omits charges which ought to have been included therein in favor of the defendant to the amount of thirteen hundred dollars.”
It might very properly be urged that although this is not put forward in the form of a counter-claim, still if the referees opened the accounts for correction they should allow to the defendant for any items which it was shown were omitted, and this, notwithstanding this allegation is so general that it in nowise apprised the plaintiffs what charges were so omitted. And this the defendant’s counsel does in fact claim, with the further suggestion that if the plaintiffs desired a particular specification they should have sought it by amendment or by bill of particulars.
But it will be seen that these allegations relate exclusively to the account of the purchases by the defendant for the cargo of the vessel. They are in terms limited to that account.
Ho account of those purchases made up by Marvine was produced or proved, to which the allegations could be referred. The account of those purchases which was produced and which was admitted to be in the handwriting of the defendant, was rendered and settled on the 3d of January, 1849. Neither of the counter-claims (so called) which the referees rejected had any connection with the purchases for the cargo of the vessel, and the sum paid for the tester, and the amount advanced to Capt. Car-mack were not paid until after that account was rendered and *295 settled. The items sought to be proved could not have entered into that account. They do not either of them come within the description of errors or omissions in that account. The allegation of such errors, therefore, laid no foundation for proving such items. These items had no existence when the account to which the allegations refer was made up and settled. I need hardly add that an allegation, that the account contained errors and omissions, will not entitle the party to prove matters which not only were in nowise a proper subject of charge in such account, but which when such account was made up and settled, had no existence.
The other clause in the answer, which is supposed to warrant the giving of the evidence, is the following: The answer alleges that, after some of the errors in the accounts had been corrected, and after the plaintiffs’ assignor (Marvine) had thoroughly examined the defendant’s accounts, a statement of accounts and of disbursements was prepared by the defendant and Marvine. This statement is what is relied upon as a final settlement of the cost of cargo, and of the outfit of the vessel, upon which the tender of the balance is alleged to have been made. It is produced on the examination of the witness Dudley, and it appears to have been adjusted, so far as any adjustment took place, on the 17th of November, 1849.
After averring the making of such statement, and the defendant’s offer to pay the balance, appearing thereby to be due to Marvine, the defendant’s answer further continues, that he then stated to Marvine, “ That this offer was made for the purpose of an amicable settlement, although it did not secure to this defendant his legal commissions, nor the rent of the house in Murray street, which the said Marvine had wrongfully collected, as aforesaid, nor other amounts justly due defendant.” Here is, obviously, no allegation, that there were any other amounts due, but only that he then stated to Marvine, that he made the offer,
. . . although it did not secure to him . . . other amounts due, etc.
The answer then proceeds: “ And this defendant saith, that he has since discovered a large amount of indebtedness from the said Marvine, to him, of which he was ignorant at the time of such conversation; and defendant saith, that the said Marvine *296 refused the money so tendered, and left the.counting room of the defendant.”
Here is no fact alleged, showing any indebtedness. It presents no charge which could be the subject of an issue. It makes no claim to set off, or counter-claim any thing. It does not even allege a legal conclusion, that the plaintiffs’ assignor is indebted, but only, that the defendant afterwards discovered an indebtedness, ■ ; ...
The insufficiency of such an averment to warrant any evidence under it, may be illustrated, by supposing a plaintiff to exhibit a complaint.in those terms. Could it be plausibly insisted, that it contained a cause of action? We think it most clearly would not; and, if not,'then no evidence could be received under such an averment,, if it were objected to. It is proper to add, on this subject, that the counsel for the defendant was. in error, in supposing that the. evidence concerning the- items of supposed counter-claim, now under consideration, were not objected to. The report of the referees states, that the evidence was objected to, and the objection reserved for consideration, and the evidence finally rejected.
XVII. In relation to the rent, which the answer did, in terms, aver had been collected by Marvine, the referees did not reject the evidence., Whether the averment was proved, and to what amount, were questions properly left to their decision, and for reasons already given, we could not interfere with their conclusion, unless very clearly- against evidence. But in this particular, we see no possible reason for questioning the justness, of their rejection of the claim, for it appears by the account made up between the parties, January 3, 1849, that this matter was adjusted between the then parties, "and that this very rent was then allowed to the defendant.
Marvine had collected the rents of the Murray street property, to the 1st of November, 1848. The title had not then been conveyed to the defendant, but the original agreement by which it was to be conveyed, was dated October 2d. It was, therefore,- a proper-subject of negotiation, from what time the rents should begin to accrue to the defendant. It was, doubtless, just that he should have the income of the property from the time he was entitled to-the assignment of the lease. The matter was settled *297 by allowing him one month’s rent out of what Marvine had collected.
XVIII. The only remaining question is, whether there is, in the case itself, evidence of bias and partiality in the referees, which warrants us in setting their report aside.
If their rulings were correct in law, and their findings of fact were supported by such evidence that we cannot say they should be set aside, as without evidence, or as against evidence, then the argument of the defendant’s counsel fails, for there is no extrinsic proof offered to show actual bias or partiality. Nay, more, it is not intimated that any extrinsic fact exists which would warrant even a suspicion of such bias or partiality.
It follows, that what has already been said, must dispose of this question. The alleged errors in law have been considered, and we have already said that we cannot find reasons for disturbing their determination of the facts. But we ought not, in justice to the referees, to dispose of the question without adding, that we think the claim, to set aside the report upon any such ground, without the slightest foundation.
The judgment must be affirmed with costs.

Gray v. Lessington, ante p. 257.