HERMAN STURM, Respondent, *v.* THE ATLANTIC MUTUAL INSURANCE COMPANY, Appellant.

One who has the control of property, either as owner, consignee or agent, may effect an insurance thereon in his own name, on account of whom it may concern, loss payable to him; and, in case of loss, may maintain an action thereon.

An overvaluation does not *per se* render a valued marine policy void; in the absence of fraud, accident or mistake, the valuation agreed upon is binding and conclusive, however largely in excess of the true value.

Overvaluation, however great, is not conclusive evidence of fraud, or that the policy is a wager contract; it is simply presumptive evidence of fraudulent intent, strong in proportion to the excess, which presumption may be repelled by proof.

In an action upon a valued marine policy, defendant moved for a nonsuit, upon the ground that the value of the property insured had not been proved, which motion was denied. *Held,* no error; that plaintiff had the right to rest upon the value fixed by the policy; that no question of overvaluation was presented by the motion, and it could not be urged upon appeal, as an objection to the ruling, that the evidence disclosed an overvaluation so gross as to furnish conclusive proof of fraudulent design.

Negligence alone upon the part of the master of the vessel will not prevent a charterer from recovering insurance upon his cargo, lost in consequence thereof. A shipper is not responsible for the negligence and carelessness of a competent master.

Where, upon the taking of the deposition of a witness *de bene esse,* the opposing party is present in person, or is represented by counsel, and the witness refuses to answer proper and material questions, the objection must be availed of upon the examination, or afterwards by motion before the trial; the party cannot wait until the trial and then object to the reading of the deposition, or move to suppress it.

(Argued September 28, 1875; decided November 9, 1875.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 6 J. & S., 281.)

This action was brought upon a policy of marine insurance, issued by the defendant to the plaintiff, upon a cargo shipped on the schooner Samuel T. Keese, on a voyage from New York to Vera Cruz. The insurance was for $30,000, "on

account of whom it may concern," loss to be paid to plaintiff. The cargo was valued in the policy at $213,000. The whole amount of insurance was $163,000. The vessel, with her cargo, was totally lost. It appeared that the goods were purchased and shipped by plaintiff as agent for the Mexican government or parties in Mexico. The questions presented and the facts pertinent thereto appear sufficiently in the opinion.

*Samuel Hand* for the appellant. There was evidence of so great an overvaluation that plaintiff was bound to prove the value of the property insured or submit to a dismissal of the complaint. (*Haigh* v. *De La Cour*, 3 Camp., 319; *Catron* v. *Ten. Ins. Co.*, 6 Humph., 185; *Pro. Ins. A.* v. *Fall*, 15 B. Mon., 429; *Watson* v. *Ins. Co. of N. Am.*, 3 Wash., 1; *Hamilton* v. *Mendis*, 2 Burr., 1198, 1213; *Hemmingway* v. *Eaton*, 13 Mass., 108; *Smith* v. *Condry*, 1 How. [U. S.], 35; *Le Roy* v. *Unit. Ins. Co.*, 7 J. R., 355; Arn. on Ins., 303.) The court erred in refusing to instruct the jury to find the value of the insured cargo at the time of shipment unless plaintiff's counsel consented. (Code, § 261; *Manning* v. *Monaghan*, 23 N. Y., 543; *Russell* v. *Conn*, 20 id., 81; *McElwain* v. *Corning*, 12 Abb. Pr., 16.) The court erred in holding the valuation of the property insured to be a bargain between the underwriter and assured. (*Carter* v. *Bocher*, 3 Burr., 1909; 1 Arn. on Ins., 488, 303; *Jomdes* v. *Pendar*, L. R., 9 Q. B., 531; *Whitney* v. *Am. Ins. Co.*, 3 Cow., 210; *Kane* v. *Com. Ins. Co.*, 8 J. R., 177; *Hamilton* v. *Mendes*, 2 Burr., 1198; *Lewis* v. *Rucker*, id., 1167; *Catron* v. *Ten. Ins. Co.*, 6 Humph., 185; *Le Roy* v. *U. Ins. Co.*, 7 J. R., 355.) The deposition of Mullen should have been stricken out. (*Cole* v. *People*, 2 Lans., 370; affirmed, 43 N. Y., 508; *Smith* v. *Griffith*, 3 Hill, 333; *Kissam* v. *Forest*, 25 Wend., 651, 652; 7 Hill, 470, 471.)

*John E. Parsons* for the respondent. Plaintiff, although not the owner of the goods insured, had an insurable interest in them. (1 Pars. on Mar. Ins., 161, and note, 162, 542–545;

2 id., 516; *Lucina* v. *Crawford*, 2 Bos. & Pul. N. P., 269;
*N. Y. B. F. Ins. Co.* v. *N. Y. F. Ins. Co.*, 17 Wend., 359;
*De Forest* v. *Fulton F. Ins. Co.*, 1 Hall S. C. R., 84; *Carruthers* v. *Sheddon*, 6 Taunt., 14; *Walsh* v. *Wash. Mar. Ins. Co.*, 32 N. Y., 427; 2 Duer on Ins., §§ 6, 9, 29, note *a;*
*Jeff. Ins. Co.* v. *Cotheal*, 7 Wend., 72; *Burrow* v. *Turner*,
24 id., 276.)  Plaintiff was not bound to prove value.  (1
Arn. on Mar. Ins. [ed. 1872], 285; 2 Phil. on Ins., §§ 1182,
1183, 1187; *Whitney* v. *Am. Ins. Co.*, 3 Cow., 210; 5 id.,
712; *Pleasants* v. *Md. Ins. Co.*, 8 Cranch, 56; *Gardner* v.
*Columb. Ins. Co.*, 2 id., 473; *Alsop* v. *Com. Ins. Co.*, 1
Sumn., 451, 474; *Coolidge* v. *Glouces. Ins. Co.*, 15 Mass.,
341–344; *Shawe* v. *Felton*, 2 East, 109; *Barker* v. *Janson*,
L. R., 3 C. P., 303; *N. of Eng. Ins. Ass.* v. *Armstrong*,
L. R., 5 Q. B., 244; *Irving* v. *Manning*, 1 H. of L. Cas.,
287.)  Overvaluation is not a fraud, but only a circumstance
from which a jury may infer fraud.  (1 Pars. on Mar. Ins.,
262, 281, 258, 379, 380; *Clark* v. *Ocean M. Ins. Co.*, 16
Pick., 289; *Robinson* v. *Mfrs. M. Ins. Co.*, 1 Metc., 143;
*Pat. Ins. Co.* v. *Coulter*, 3 Pet., 222, *Wright* v. *Orient. Ins.
Co.*, 6 Bosw., 269; *Patrick* v. *Hallett*, 1 J. R., 241; *Barnewall* v. *Church*, 1 Cai., 217.)  An owner of a cargo on a
vessel is not responsible for the negligent act of the crew.
(1 Pars. Mar. Ins., 381; *Dixon* v. *Sadler*, 5 M. & W., 405;
*Redman* v. *Wilson*, 14 id., 476; *Busk* v. *Roy. Ex. As. Co.*, 2
B. & Ald., 73; *Mathews* v. *How. Ins. Co.*, 11 N. Y., 9;
*Walker* v. *Maitland*, 5 B. & Ald., 171; *Draper* v. *Comm.
Ins. Co.*, 4 Duer, 234–239.)  The court properly refused to
strike out the deposition of Mullen.  (*Zeaurager* v. *Coffe*, 5
Duer, 87–100; *Kimball* v. *Davis*, 19 Wend., 437; *Merrill*
v. *I. and O. R. R. Co.*, 16 id., 586; *Cole* v. *Jessup*, 10 N. Y.,
96; *Pendleton* v. *Weed*, 17 id., 72.)

   \* FOLGER, J.     \*     \*     \*     \*     \*     \*     \*

   The questions presented by the two motions for a nonsuit
are three.  The first is, that the plaintiff had not shown that

   \* The omitted portions of the opinion dispose of questions peculiar to
the case, and not of general importance.

he was entitled to the property or the possession thereof, and that it clearly appeared that the interest in the property was not in the plaintiff. .This is addressed to the question of insurable interest. It was not much urged on the argument in this court, nor was it abandoned. No view of the testimony will sustain the conclusion that the property was not, at the time of the shipment of it, under the control of the plaintiff. At that time, in the actual possession of whomsoever it was, it was subject to his direction, and whosoever had it actually in hand, was bound to obey his orders in regard to it. Whether he had control as owner or as consignee, or as agent, he had an insurable interest; that is, a right to apply for and effect an insurance upon it, which should be valid and subsisting in his own name, on account of whom it might concern, in case of loss to be paid to him; which was the contract of insurance made by him with the defendant. An insurable interest is defined by Lord ELDON to be a right in the property, or a right derivable out of some contract about the property, which, in either case, may be lost upon some contingency affecting the possession or enjoyment of the party. (*Lucena* v. *Craufurd*, 2 Bos. & Pul. N. R., 269.) He either owned it, or he had a trust to discharge as to it, and was, in some measure, liable for its safety, and he had the possession, or the right of possession; and this creates an insurable interest. (*Buck* v. *Chesapeake Ins. Co.*, 1 Pet. U. S. Sup. Ct., 151; and see *De Forest* v. *Fulton Fire Ins. Co.* 1 Hall Sup. Ct., 84, for a full and satisfactory discussion of this topic; see, also, *Waring* v. *Ind. Fire Ins. Co.*, 45 N. Y., 606.) This ground of motion for a nonsuit was not tenable. There was that in the testimony from which could be found the facts, to bring this policy and the property covered by it, within the principles laid down in the cases cited.

\*      \*      \*      \*      \*      \*      \*      \*      \*

It was the other, of the three grounds of nonsuit taken at the trial, which was the most elaborately and earnestly argued in this court. It was that the value of the property insured had not been proven. \*   \*   \*   As the policy was a

valued policy, the exact value needed not to be proven by the plaintiff to make a *prima facie* case. (*Feise* v. *Aguilar*, 3 Taunt., 506.) The value named in it, was the amount agreed upon by the parties as the liquidated damages in case of loss. It was so agreed upon, for the express purpose of relieving either party from the task of proving precise value, as either party might find for his or their interest to repose upon the stipulated value. The value fixed by the policy was conclusive upon the parties, unless there was fraud, or accident, or mistake. There was no suggestion in the motion for the nonsuit that an overvaluation had been shown, still less, one so gross as that it was conclusive evidence of fraud; and there was nothing in the case to suggest accident or mistake. The loss was a total loss. * * * The plaintiff had a right to rest upon the valued policy for the proof of the amount of interest, and to submit the issue of a fraudulent overvaluation, to that branch of the trial court in whose province it was to try it, upon the proofs which had been put before it by the parties. Moreover, the very position that an overvaluation had been shown, includes in it the suggestion, that the real value, to some extent at least, had also been shown; for, to show an overvaluation in the policy, and in the statement of the plaintiff made after the loss, the real value must appear definitely or approximately, else how shall it appear that there is a disparity between the real and the ascribed value; and if no disparity is shown, how is it shown that there is a gross overvaluation? And if the real value had thus been shown, whereby the overvaluation had been made manifest, why call upon the plaintiff to prove the real value or be nonsuited? He had as good right to use the real value, as shown, for his purpose, as the defendant for its. If the claim of the defendant is, that by the proof of overvaluation, they were entitled to open the policy and to show the actual value of the subject insured, and to limit their liability to that value; the plaintiff had as good right to say, " if the policy is opened, and I am to recover no more than the actual

value of my interest, I will take the proof which is in the case to establish that real value, and as some real value is shown, let the jury determine what that is, in specific amount." If, on the other hand, the claim of the defendant is, that the overvaluation appears from the testimony so excessive and gross as that it was evidence of fraud, the plaintiff had as good right to argue from the same testimony to the contrary. And if going further, the view of the defendant is, that the overvaluation was so excessive and gross as at once to shock the sense and to present conclusive proof of fraudulent design; so excessive and gross as that a verdict for the plaintiff must be manifestly against the weight of the evidence, and need to be set aside and to require a nonsuit from the court; we have to say that the motion made, as it is returned to us in the appeal book, did not present that question nor call upon the judge to nonsuit for that reason. To nonsuit for a gross overvaluation in the policy, asserts that the real value of the property is in some degree shown, while the motion was to nonsuit because the value of the property was not proven. But if it be granted that the attention of the court was properly and distinctly called to the subject of overvaluation, and that a nonsuit was plainly asked for on that ground, was the court clearly in error in refusing it?

Let it at first be conceded that there was, beyond room for rational dispute, an overvaluation of the property, that does not, *per se*, render a valued marine policy void. Where the transaction is *bona fide* the valuation agreed upon is binding, however largely in excess of the true value. (*Barker* v. *Janson*, L. R., 3 C. P., 303.) The excess in valuation, however great, is only evidence of fraud. (Id.) So, too, overvaluation is not conclusive evidence that the policy was with a view of gaming or wagering. (*Coolidge* v. *Glo. Mar. Ins. Co.*, 15 Mass., 341.) As there can be no wager policy unless both parties agree therein (*Alsop* v. *Com. Ins. Co.*, 1 Sum., 451), the expression in 15 Massachusetts (*supra*) is equivalent to saying that overvaluation is not conclusive evidence of

fraud; for if one party intends a wager, and with that intention procures a policy from another who acts in good faith, it is a fraud upon the latter. (1 Sum., *supra*; see, also, *Feise* v. *Aguilar, supra*.) I am aware that in *Haigh* v. *De La Cour* (3 Camp., 319) a nonsuit was granted, where it was shown that goods worth £1,400 had been valued at £5,000; but in that case there were other strong circumstances. The bills of lading had been interpolated by the master, after signature. The invoices were fictitious. It was upon the sight of these that the underwriter took the risk. The case is a precedent for the granting of a nonsuit in a case of overvaluation, but it is not in hostility to those I have cited above, for the other circumstances in it here noted were strong evidences of fraudulent intention, and were the very means used for obtaining the contract. And in *Lewis* v. *Rucker* (2 Burr., 1167–1171), by way of illustration in argument, Lord MANSFIELD says: "If it should come out in proof that a man had insured £2,000 and had interest on board to the value of a cable only, there never has been, and I believe there never will be, a determination that by such an evasion the act of Parliament may be defeated." It is to be noticed of this illustration that Chancellor KENT (his Comm., vol. 2, p. * 273) speaks of it, that "there is no doubt it would raise a strong presumption of fraud." Chancellor KENT, in the same connection, speaks of a valuation "so excessive as to raise a necessary presumption of fraud." I apprehend that these phrases, "evidence of fraud," "strong presumption of fraud" and "necessary presumption of fraud," mean the same thing, which is, that a grossly excessive valuation does furnish strong presumptive evidence that the party effecting an insurance thereon did have fraudulent design. I apprehend the rule to be, that however great the valuation in excess of the real worth, if the contract based upon it was fairly made, it will not, for that reason alone, be avoided or the valuation opened; but that to avoid or open the policy, it must appear that there was a fraudulent purpose on the part of the insurer, in presenting to the underwriter the excessive valuation as a basis

of the insurance; and that in the inquiry whether there was a fraudulent purpose, overvaluation is to be taken as presumptive evidence thereof, and that as the overvaluation grows greater so does the presumption of fraud grow stronger. Seldom, however, can the presumption be so strong as to become conclusive, for when conclusive it forbids all opposing evidence. (1 Greenl. on Ev., 193, § 15; see *Forbes* v. *Aspinall*, 13 East, 323–328; *Gardner* v. *Col. Ins. Co.*, 2 Cranch, C. C., 550; 1 Sum., *supra.*) It is not to be denied that there might be a case, in which the insured would not be able to present any proof to rebut the presumption arising from his excessive overvaluation, as one, like that presented in *Lewis* v. *Rucker* (*supra*), or *Haigh* v. *De La Cour* (*supra*). But it would be a case of lack of ability, not of lack of right; and the presumption of fraudulent purpose would prevail, not because it was conclusive, but because there was nothing opposed, or to be opposed to it in proof. It comes, then, to this: that overvaluation is presumptive of fraudulent purpose, but the presumption may be repelled by proof. If, then, it is conceded, that in this case there was an overvaluation, it furnishes no more than a presumption of fraud; and whether that presumption should prevail, was to be determined upon a consideration of it, with all the other facts in the case having a bearing upon the question. So that it was not for the court, merely upon a settled conclusion that there was an overvaluation, and that great, or very great, to determine that there was a fraudulent purpose, but he was also to weigh the other facts in the case therewith. Now, at the first entrance into such an inquiry, there is this which meets us: that it is seldom that there is a fraud committed upon another, or one contemplated, unless there is expected therefrom some benefit or profit to the wrong-doer. And then arises the next query: what profit or benefit could the plaintiff in this case have expected from the overvaluation, unless there was with it the design, and an expectation founded upon preparation therefor, of effecting a loss at sea of the property

overvalued and insured?   It may be said that men will some-
times pay an enhanced premium on an overvaluation, and
take the ordinary and self-arising chances of a loss.   But it
is not so natural a connection of facts, as to give rise to a
presumption, that one will ship goods upon a vessel ordinarily
seaworthy, in charge of competent navigators not in any
collusion with him, for a customary and well known and not
lengthy voyage, at a season of the year not especially bois-
terous, and will, by an overvaluation of his property incur a
double rate of premium, merely upon the chance that the
vessel will go down from the perils of the sea alone.   So that,
there necessarily was further to be considered all the testimony
as to the character and condition of the vessel, her apparel
and equipment; as to the character and conduct of the mas-
ter and the mate, and their connection with the plaintiff, and
causes operating upon them to do well or ill in their care of
the vessel; and as to a design to cast away the vessel,
which could have been entertained and carried out only
by a conspiracy of others with the plaintiff.   It is now easy
to be perceived that there was involved in a nonsuit of the
plaintiff, on the ground of overvaluation, a consideration of
the testimony of witnesses who conflict with other witnesses,
of witnesses who are in contradiction with themselves, and of
very much evidence, which was certainly not to be taken
from the judgment of the jury in determining those very
important questions in the case, which I have just men-
tioned; the determination of which, in my judgment, was
quite important, if not necessary, to a satisfactory solution of
the question of fraudulent purpose in procuring the insur-
ance.   I am thus brought to the conclusion, that the judge at
the trial would not have been warranted in nonsuiting the
plaintiff, on the ground that the overvaluation was so great as
to show beyond doubt that there was a fraudulent design in
procuring the insurance.   It was a case for a jury, as gener-
ally are all cases involving the question of fraudulent intent,
when it is to be solved by a consideration of many facts, to

be arrived at from the testimony of many witnesses who differ and contradict.

\*        \*        \*        \*        \*        \*        \*

The court was asked to charge that if the master suffered the vessel to sink without proper care, or the exercise of ordinary skill and good faith in the navigation, and reasonable efforts to prevent loss, the charterer cannot recover insurance upon his cargo lost by that cause.

This proposition does not include any barratrous act of the master, but only his negligence. Nor does it involve the question of whether he was competent. It assumes that he was competent, but did not use the skill and experience which he possessed. It therefore presents the idea, that a shipper is responsible for the negligence and carelessness of a competent master. This cannot be, unless the master is to be deemed the agent or servant of the shipper, which will not be claimed. He is, of the owner of the ship, but not of the owner of the cargo. And as his affirmative act of wrong done against the shipper is covered by the insurance (*Earl* v. *Rowcroft*, 8 East, 126), so are his negligence and carelessness by which the shipper is injured. The underwriter is liable for losses by the perils insured against, though in consequence of the negligence of the insured himself, if it does not amount to gross negligence or willful misconduct. (*Johnson* v. *Berk. Mut. F. Ins. Co.*, 4 Allen, 388.) How much more so, if in consequence of the negligence of the master, who is not the agent or servant of the shipper? (See 2 Phil. on Ins., §§ 1049, 1096.)

\*        \*        \*        \*        \*        \*        \*        \*

The defendant objected to the reading of the deposition of the witness Mullen taken *de bene esse*, and moved at the trial, that it be stricken out, after it was read.

It took the grounds that the proofs preliminary to the admission of it were insufficient, and that the witness had refused to answer important and material questions put to him on his cross-examination before the officers. It may be conceded that the questions, or some of them, which obtained

no answer were proper and material, and that it was miscon-
duct in the witness to refuse answer to them.

It may be taken as the rule, that where a party is deprived
of the benefit of the cross-examination of a witness, by the
act of the opposite party, or by the refusal to testify or other
misconduct of the witness, or by any means, other than the act
of God, the act of the party himself, or some cause to which he
assented, that the testimony given on the examination-in-
chief may not be read. (*The People* v. *Cole*, 43 N. Y., 508;
*Smith* v. *Griffith*, 3 Hill, 333; see *Forrest* v. *Kissam*, 7 id.,
465.) And the rule may be applied to the examination of a
witness on commission, or conditionally out of court, when,
in such case the party desiring the benefit of a cross-examina-
tion has not been present or represented at the taking of the
testimony, and had no opportunity to push his cross-examina-
tion, or to know of the refusal of the witness to testify, or
of his neglect to answer any question, or of other like mis-
conduct of the witness. (*Smith* v. *Griffith, supra.*) But
where the party is present at the examination of the witness
in person or by counsel, and is there fully apprised of the
facts upon which he afterwards relies at the trial to suppress
the testimony, and does not at the examination, or afterwards
before trial, seek to avail himself of them to that end, or to
procure for himself before or at the trial the benefit of a full
cross-examination, he may not, waiting until the trial, then
for the first object to the reading of the deposition, or move
to suppress it. He should take an earlier opportunity for
action, so that, if successful, his opponent might move for a
commission to examine his witness anew out of court, or
might obtain a personal attendance at the trial. (*Kimball* v.
*Davis*, 19 Wend., 437; S. C., 25 Wend., 259, where judg-
ment is reversed, but this ruling approved; and see per
SLOSSON, J., *Zellweger* v. *Caffe*, 5 Duer, 87–100; see, also,
*Rust* v. *Eckler*, 41 N. Y., 488; *Sheldon* v. *Wood*, 2 Bosw.,
267.) In the case in hand the defendant cross-examined the
witness at length, without raising any question, or making
any objection at the time, or in any manner intimating dis-

satisfaction with the conduct of the witness, or a purpose of preventing the use of the deposition on the trial. Nine months having elapsed, it was too late after the trial had begun and was progressing before a jury, for the first time to move to suppress the deposition and deprive the plaintiff of the testimony.

   \*      \*      \*      \*      \*      \*      \*

On an examination of all the exceptions taken at the trial and now presented in this court, I come to the conclusion that the trial was properly conducted, and all the questions fairly submitted to the jury, and that there were no errors made. The jury has, upon the issues of fact, found against the defendants, and that finding we cannot disturb.

The judgment must be affirmed.

All concur.

Judgment affirmed.

