The opinion of the court was delivered by
Valentine, J.:
This was an action brought by J. C. Smith •■and Frank E. Barnes, partners doing business under the firm-name of Smith & Barnes, against B. F¡ Simpson and Charles B. Jones, for the recovery of $1,605.12 damages, alleged to have been sustained by reason of the defendants’ taking possession of, and converting to their own use, certain goods and ■chattels alleged to have belonged to the. plaintiffs. The real and substantial question, however, that was litigated in the ■case was this: Who was the owner of the goods and chattels alleged to have been taken and converted — Samuel Barnes, or ■the firm of Smith & Barnes? The case was tried in the court below before the court and a jury, and the verdict and judgment were rendered in favor of the plaintiffs and against the ■defendants for the full amount claimed by the plaintiffs; and the defendants, as plaintiffs in error, now bring the case to this court for review.
It appears from the evidence introduced on the trial, that Samuel Barnes and Frank E. Barnes are brothers; that from *568 about June 22,1878, up to July 1,1878, Samuel Barnes owned all the goods in controversy; that about July 1,1878, Samuel Barnes took his brother, Frank E. Barnes, into partnership with him, giving him an interest in the goods, and that the two brothers then did business for a short time together, under the firm-name of S. Barnes & Co.; that about August 31, 1878, the firm of S. Barnes & Co. executed a chattel mortgage on the property to Edward Dunscomb and James A. Seaver, doing business under the firm-name of Dunscomb & Seaver; that afterward, and about September 16,1878, Dunscomb & Seaver, under the authority of the chattel mortgage, sold the goods to Smith & Barnes; that about October 20, 1878, the defendants, B. F. Simpson, as United States marshal, and Charles B. Jones, his deputy, seized and took possession of the goods by virtue of an order of attachment issued out of the United States circuit court for the district of Kansas, in an action in which Samuel M. Dodd and James G. Brown, doing business under the firm-name of Dodd, Brown & Co., were plaintiffs, and Samuel Barnes was defendant, and afterward sold the goods by virtue of the attachment proceedings. The defendants, Simpson and Jones, attached the goods as the property of Samuel Barnes, claiming that they belonged to him; and they still make such claim, while the plaintiffs, Smith & Barnes, on the other hand, claim that the goods belonged to them. The defendants, Simpson and Jones, claim that all the transactions had between Samuel Barnes and his brother Frank E. Barnes, and between them and the firm of Duns-comb & Seaver, and between Dunscomb & Seaver and the firm of Smith & Barnes, were had for the purpose of hindering, delaying and defrauding the creditors of Samuel Barnes, and were therefore, as against Dodd, Brown & Co., creditors of Samuel Barnes, and all persons acting under or for them, void in law, and did not transfer any title or interest in or to-the property from Samuel Barnes to his brother Frank E. Barnes, or from the two brothers to Dunscomb & Seaver, or from the two brothers or Dunscomb & Seaver to the present plaintiffs, Smith & Barnes; the last-named Barnes of the firm *569 of Smith & Barnes being Frank E. Barnes, the brother and former partner of Samuel Barnes. The- plaintiffs, Smith & Barnes, however, claim that all the said transactions were in good faith, and that Smith & Barnes became the owners-of the property before the said'attachments were levied upon the goods. The claim of Dodd, Brown & Co. against Samuel Barnes was founded upon promissory notes given for goods sold by Dodd, Brown & Co. to Samuel Barnes and E. R. Haynes, and was a claim against Samuel Barnes back to the time when Samuel Barnes was admitted to be the unquestioned and exclusive owner of the goods.
It will be seen that the only substantial question presented to the court below was, whether the various transactions had between Samuel Barnes, Frank E. Barnes, Dunscomb & Sea ver and Smith & Barnes were in good faith or not; for, if they were all in good faith, then the plaintiffs in this action,' Smith & Barnes, were the owners of the goods and entitled to recover for their value in this action; but if said-transactions were not in good faith, if in fact they were instituted and carried forward for the purpose of hindering, delaying or defrauding the creditors of Samuel Barnes, then as between the creditors of Samuel Barnes and the above-named persons, Samuel Barnes was the real and legal owner of the goods, and the defendants in this action, Simpson and Jones, are entitled to recover.
The plaintiffs in error, Simpson and Jones, present six principal grounds of alleged error, for which they claim a reversal of the judgment of the court below. We shall consider these alleged grounds of error in their order.
I. The first alleged error is, that the court below refused to strike out of the deposition of Frank E. Barnes that portion which reads as follows: “About the 20th day of October, 1878, the plaintiffs in this case were the absolute owners of the goods mentioned and described in their petition in this-case.” This evidence, we think, was incompetent. It is seldom competent to prove a fact by a simple assertion of the fact itself. And this is especially true where the fact is of a *570 complex character, and is the principal, if not the only ground of contention in the case. Facts to be used as evidence are generally such only as may be denominated simple, primary or elementary facts; such only as have come within the witness’s own personal knowledge; such only as have in some manner or degree affected some one or more of his primary and original senses; such only as in some manner or degree involve matters and things which he has seen, heard, felt, tasted, or smelt; while on the other hand, facts of a complex nature, such as are not the direct and immediate cognitions of the witness’s own primary senses, but such only as are mere inferences or conclusions drawn from various other facts cannot generally be directly testified to by the witness. A complex fact can generally be proved only by proving in detail its primary and constituent facts, or by proving other facts which as causes are supposed to have brought this complex fact into existence, or by. proving still other facts which, as effects, are supposed to be the natural and legitimáte consequences of this complex fact; or by proving some collateral fact or facts which, with this complex fact, are supposed to be the common results or the common causes of the same set of facts, and thereby and by that means have some connection with the final fact to be proved; (for the evidential facts must in all cases have some connection with the final fact to be proved, but should rarely, if ever, be that final fact itself;) or, in some very rare cases, by proving in the proper manner some still more general or comprehensive fact which includes the final fact to be proved. But as a general rule, only such facts can be testified to directly by the witness as are comparatively simple, primary and elementary, and such only as come within the direct and immediate cognition of his senses. The witness should generally be directed to state what he has seen, heard, etc.; and then he should state the same in detail, and not attempt to give it in the aggregate. Now ownership of property is not one of such simple, primary and elementary facts as come within the direct and immediate cognition of the witness’s senses. On the contrary, it is one of that class of *571 complex facts which can only be conceived in thought or realized in consciousness as a combination of a variety of constituent facts, or as an intangible inference or mere conclusion drawn from a variety of other facts more simple and less complicated in their nature.
In the present case the main fact to be proved,' the final and ultimate fact to be ascertained, was whether the plaintiffs owned the property in controversy, or not. If they owned it, they were entitled to recover; but if they did not own it, they were not entitled to recover. It was simply this question of ownership, and nothing else, which the jury wereimpanneled to try. And to allow one of the plaintiffs to testify that the plaintiffs “were the absolute owners” of the property in controversy, was almost the same as permitting the plaintiffs to testify directly to the jury that they {theplaintiffs) were entitled to recover, ' If it is competent for the plaintiffs to testify that they were the absolute owners of the property in controversy, then it would also be competent for the defendants to testify that the plaintiffs were not such owners. Indeed, if it was competent for the plaintiffs to introduce such testimony, then it would be competent for the defendants to introduce witness after witness, and witness after witness to an indefinite number, simply to state as a witness that the plaintiffs “did not own the property” at the time it was attached. The evidence on the one side would be, “We own the property;” and on the other side it would be, “No, you don’t.” We think it is perhaps true, that the ownership of property may sometimes be proved by the direct.statement of the ownership; but it is never true'where the question of ownership is one of the main questions involved in the ease. It is probably true only where the question arises for the first time during the trial, and where the fact of ownership is proved as a minor and subordinate fact, or a collateral and unimportant fact, tending more or less directly or remotely to prove some other fact more directly involved in the issues of the case. Ownership of personal property is usually proved by the fact of prior possession, (proved in a proper manner,) *572 with a claim of ownership, and by proof of legal transfers from the person first in possession claiming ownership down to the last. In the present case, all parties admitted that Samuel Barnes once owned the property; and that, so far as they are concerned, he was the original and prior owner; and therefore they all now claim, and claimed at the trial, under him; and therefore the proper evidence which should have been introduced on the trial, on the part of the plaintiffs, would have been evidence tending to show that by legal transfers of the property from Samuel Barnes down to them, they had finally become the true and lawful owners thereof. In all cases where the question of ownership is put in issue by the pleadings, the fact of ownership should be proved by proving in detail all the probative and evidential facts, all the minor and subordinate facts which go to make up and constitute the main fact of ownership, and indeed all the facts which may in any manner tend to prove the fact of ownership; and no witness should be allowed to state simply his opinion with regard to the ownership. In the present case, however, the witness Frank E. Barnes did not state-any facts tending to prove ownership, except the general statement that the' goods, at the time they were attached, were in the possession of the plaintiffs, and that they had been in their possession for some time previously. The witness did not pretend to state how the plaintiffs (himself and J. C. Smith) obtained the possession of -the goods, or how they became the owners. He did not pretend to state how the possession and ownership of the goods passed from Samuel Barnes, the prior-owner, to himself and J. C. Smith. All that he stated was that he and J. C. Smith were in the possession of the goods, and that they were the “absolute owners of the goods,” as-above stated. Nor did the plaintiffs introduce the testimony of Samuel Barnes, or J. C. Smith, or Edward Dunscomb, or-James A. Seaver, to show how the title and possession of the goods passed from Samuel Barnes to the plaintiffs, J. C. Smith and Frank E. Barnes.
These persons, Samuel Barnes, and J. C. Smith and Duns- *573 comb & Seaver, were the persons who ought to have known precisely how said title passed, if it ever did pass, and how Smith & Barnes became the owners of the property, if they ever did become such owners. We think the foregoing evidence objected to, was, under the circumstance^ of this case, not competent. But was its admission material error? If this were the only error in the ease, we should say that it was not material. In practice, ownership of property is often proved in this manner, and where the fact of ownership is not one of the main issues in the case, such proof would probably never be held to be material error. We shall pass this question, however, for the present, and not refer to it again until after we have considered all the other alleged errors.
II. The second alleged error is, that the' court below permitted the plaintiffs below to read in evidence to the jury a certified copy of the chattel mortgage from S. Barnes & Co. to Dunseomb & Seaver. There was no error in this. The defendants, in their answer, had admitted the execution of the chattel mortgage; and besides, their objection to its introduction was simply upon the general grounds that it was “ incompetent, irrelevant, and immaterial.” There was no special objection urged against it, admitting that it was proper evidence for one purpose, but not for another — no suggestion by the defendants that its use should be confined or limited, as evidence of the fact only that the original instrument “was received and filed according to the indorsement of the register thereon.” But the objection was general, as aforesaid, and the attempt was to exclude it for all purposes. Now the certified copy was undoubtedly good evidence, and sufficient evidence, for the purpose of proving that the original instrument “was received and filed according to the indorsement of the register thereon.” (Comp. Laws of 1879, p. 557, § 13.) ■ And ■the court below, under such circumstances, did not err in permitting it to be introduced in evidence.
III. The third alleged error is, that the court below allowed the witness A. D. Haynes to testify as to what “the stock of goods covered by the mortgage consisted of, and where it was *574 situated.” There was certainly no material error in this, if error at all. The mortgage had just been read in evidence, describing the goods and stating where the goods were situated. Besides, the answer of the witness was general, that “the stock of goods consisted of dry goods, groceries, boots and shoes and general stock, and was situated in building known as Barnes & Haynes’s building, in Medina.” And the question was evidently asked the witness for the purpose only of eliciting evidence to show to the jury that his testimony which was afterward to be given would be with reference to the same goods which the mortgage itself showed had been mortgaged by S. Barnes & Co. to Dunscomb & Seaver.
IV. The fourth alleged error is, that the court below permitted the plaintiffs to read in evidence to the jury a letter which the witness J. B. Carson testified he had received from Dunscomb & Seaver. The letter reads as follows:
“Kansas City, Mo., Sept. 12, 1878.
“J'. B. Carson, Esq., Medina, Kansas — Dear Sir: Yours of the 11th is to hand, inclosing sales of same date. We note that they are only $2.05, which is very small. We note that you will send down by express to-day $25, and trust you got it off. We also trust you got off the car of corn. Mr. Kagy will be up in Medina now in a day or so. Yours truly,
Dunscomb & Seaver
This evidence was surely incompetent. Neither Carson, nor Dunscomb, nor Seaver was a party in this case, and neither the defendants Simpson and Jones, nor Dodd, Brown & Co. claimed to hold under Dunscomb & Seaver; but on the contrary, they claimed to hold adversely, and the plaintiffs themselves claimed to hold the goods under Dunscomb & Seaver; and besides, this evidence was Dunscomb & Seaver’s unsworn statement, and was not in disparagement of their title to the goods, but was introduced for the purpose of sustaining it and bolstering it up. As before stated, the defendants claim that all the transactions between Samuel Barnes, Prank E. Barnes, J..C. Smith, Edward Dunscomb and James A. Seaver were fraudulent and void, and that Dunscomb & Seaver never *575 had any title to the property; that the title and possession of the property always in fact remained in Samuel Barnes, and that the pretended possession by Dunscomb & Seaver was only á cover and a deceitful sham for the purpose of defrauding the creditors of Samuel Barnes. The evidence of J. B. Carson was introduced for the purpose of showing that Duns-comb & Seaver obtained the possession of the goods under their chattel mortgage, and that he, Carson, was placed in the possession of the goods as their agent; and this letter was introduced for the purpose of bolstering up his evidence, and of showing the good faith of all the transactions. Other evidence showed that during the time that Carson pretended to be in the possession of the goods as the agent of Dunscomb & Seaver, that both Samuel Barnes and Frank E. Barnes were continually in and around the store where the goods were situated. Frank E. Barnes assisted Carson in selling the goods to customers and to persons who desired to pur- . chase; and Frank E. Barnes had a key to the store, and could go into it whenever he chose; and he slept there every night. Now this letter, along with the evidence of Carson, was evidently introduced for the purpose of showing that Carson was in fact in the possession of the goods, and not as the agent of either of the Barneses, but as the agent for Duns-comb & Seaver, and that neither Samuel Barnes nor Frank E. Barnes was in the possession of the goods. Now of course it was perfectly competent.for the plaintiffs to show that Duns-comb & Seaver were in the possession of the goods, by Carson or by any other person as their agent; but it was necessary for them to do so by competent evidence. The letter from Dunscomb & Seaver was not itself the fact of possession, nor was it any fact, except that it was a mere letter; and as its contents were the mere statements of Dunscomb & Seaver, not under oath, its contents were incompetent to prove any fact or anything as against the defendants in this case. When this letter was written, is not shown. There was no evidence introduced showing that it was written on or about the day of its date; but at best, it was only hearsay evidence as against *576 the defendants in this case. It was merely what Carson testified that Dunscomb & Seaver said in a letter to him. This letter was introduced in evidence on the redirect examination of Carson by the plaintiffs. Previously, however, on the cross-examination of the witness Carson by the defendants, he had testified, (but whether in response to a question put to ■him or not, is not shown,) “I had letters from them,” (meaning that he had received letters from Dunscomb & Seaver;) but no attempt was made on the part of the defendants to in-, troduce any of these letters in evidence, or to introduce any ■evidence tending to show the nature or character of their contents; and nothing further was said by the witness about any of such letters on the cross-examination. If the admission of this letter in evidence was the only error committed in the case, we could hardly say that the error was material. Many slight errors in the aggregate are sometimes, however, more prejudicial than one single error of much greater magnitude. Hence, it may be, that taking this error in conjunction with the other errors committed by the court below, the whole together would require a reversal of the judgment of the court below; while no one of them, taken singly, would require any such result.
~V. The fifth alleged error of the court below is, that the court below erred in striking out and excluding from the jury certain portions of the respective depositions of Edward Duns-comb and James A. Seaver. Upon this question, the members of this court are divided. The Chief Justice and Mr. Justice Brewer are of the opinion that no error was committed by the exclusion of said evidence; while in the opinion of the writer of this opinion, error was committed-by the exclusion. These witnesses, Dunscomb and Seaver, as before stated, were the persons who composed the firm of Dunscomb & Seaver, to whom the chattel mortgage, executed by S. Barnes & Co., had been given. This mortgage, the defendants asserted^ was fraudulent and void, and if.it was fraudulent and void, then the plaintiffs’ case must necessarily have failed for the reason that Smith & Barnes could not be innocent purchasers of *577 the goods — Frank E. Barnes, the junior member of the firm of Smith & Barnes, being not only a member of the firm giving the mortgage, but also a member of the firm claiming title by virtue of the sale made under the mortgage, and his knowledge being the knowledge of both firms. Both Duns-comb and Seaver were competent witnesses in the case, and presumably were in possession of all the facts necessary to establish the fair or fraudulent- character of the mortgage. They lived at Kansas City, Missouri, and the defendants sought to obtain their testimony by deposition, and they were examined before a notary public of Kansas City, Missouri, for that purpose. The questions asked them were perfectly competent and relevant for the purpose of showing the character of the transactions had between them and the firms of S. Barnes & Co., and Smith & Barnes; but instead of answering the questions directly, as they should have done, .each uniformly responded in substance: “I decline to answer, because it might subject me to a criminal prosecution.” On. the trial of this case, after the plaintiffs had rested, and while the defendants were introducing their-evidence, the defendants offered in evidence the depositions of these witnesses, thus taken in Kansas City, Missouri; but the plaintiffs objected, and the court below struck out all of the answers given as above stated, and also all the questions thus answered, and would not allow the same to go to the jury. These questions and answers were substantially all of the depositions. These depositions had been on file for several months before the trial was commenced, and whether if any motion had been made to strike them out or suppress them, or to strike out or suppress any portion of them, at any time before the commencemeni of the the trial, such motion should have been sustained, it is not necessary for us now to determine; for no such motion was made. No motion was at any time made attacking the depositions, or objecting to them in any manner, until after the trial had been commenced, and until after all the plaintiffs’evidence had been introduced. We might further state, that these depositions were not taken upon interrogatories, but were taken *578 merely upon notice given by the defendants to the plaintiffs, and hence the defendants had a right at the time of taking the depositions to ask the witnesses any questions which might fairly elicit any evidence that would be competent and relevant in the case. We might also state, that at the time the depositions were taken, the plaintiffs were not present.
The question, then, for our consideration is this: Where depositions have been taken by one party, upon due notice given to the other party, and the depositions have been on file for several months before the commencement of the trial, and no motion is made by the adverse party before the commencement of the trial, attacking the depositions or any part thereof in any manner whatever, and where some of the answers to "questions propounded by the party taking the depositions are not responsive to the questions asked, but are evasive, and state matters not called for by the questions asked, but still the answers, taken in connection with the questions asked, tend to prove some of the issues in the case, may the adverse party, when the party who has taken the depositions offers to read them in evidence, object to such questions and answers and have them stricken out of the depositions and excluded from the jury? Now both Dunscomb and Seaver unquestionably knew whether the transactions had between them and the firms of S. Barnes & Co. and Smith & Barnes were fraudulent or not; and unless they were fraudulent, Dunscomb & Seaver could not have been guilty of any criminal offense or subject to any criminal prosecution because of any connection which they might have had with said transactions; hence their refusal to testify, because it might subject them to a criminal prosecution, was some evidence that the transactions were fraudulent, and therefore the evidence was unquestionably relevant; but was it not also competent? My brethren say not; and they so say upon the authority of 1 Greenleaf’s Evidence, § 450, note 5, and the authorities there cited, to wit: Rose v. Blakemore, Ryan & M. 383; Phelin v. Kenderdine, 20 Pa. St. 354; Carne v. Litchfield, 2 Mich. 340; Boyle v. Wiseman, 29 Eng. *579 Law & Eq. 473. While on the other hand I think error was committed, and would refer to the following authorities: Weeks on Depositions, §§404, 504; Wharton’s Evidence in .Civil Cases, §§533, 546, 1266-1269; Strum v. Atlantic Mut. Ins. Co., 63 N. Y. 77; Andrews v. Frye, 104 Mass. 234; Rex v. Watson, 2 Starkie, 135; Boyle v. Wiseman, 29 Eng. Law & Eq. 474; Nelson v. Iveson, 24 Ala. 9.
The defendants had a right unquestionably to prove that the transactions were fraudulent, although such evidence might at the same time prove that Dunscomb & Seaver, as well as all the other parties connected with the supposed fraud, were guilty of a criminal offense. And what valid objection can there be for proving the fraud in this manner, where, as in this case, no better evidence could possibly be procured by the defendants from these witnesses ? And the defendants should not be required to call the plaintiffs and Samuel Barnes as witnesses. As before stated, the witnesses Dunscomb & Seaver resided in the state of Missouri. If the witnesses had been present at the trial, and upon the witness stand, the questions would have been propounded to them in the presence of the jury, and the jury would have heard the questions asked, and would have heard the answers given, and would have known precisely the conduct of the witnesses while giving their testimony, and would, in my opinion, though the authorities are conflicting, have had a right to take all these matters into consideration in deliberating upon their verdict. Then, why should these matters be excluded from the jury, when produced in the form of a deposition? But, admitting for the purposes of the argument, that the plaintiffs would have had the right to have these questions and answers stricken from the depositions and excluded from the jury, if they had made the motion therefor before the trial was commenced, still, as they did not make any such motion, or any objection of that kind, before the trial, I think their motion and objection were made too late to be available. (Weeks on Depositions, §§404, 504; Strum v. Atlantic Mut. Ins. Co., 63 N. Y. 77.)
*580 I think the court below erred in excluding said questions and answers.. But my brethren think otherwise, and their combined opinion overrules mine.
VI. The sixth alleged error is, that the court below erred in giving instructions numbers 6 and 7. The sixth instruction was unquestionably erroneous; but it was erroneous simply from the fact that the court below, instead of saying the creditors of Samuel Barnes, inadvertently said “the creditors of Dodd, Brown & Co.” The mistake was so palpable and manifest that we hardly think it could have misled the jury, though possibly it might.
We think the seventh instruction was also erroneous, because it was not applicable to the facts of this case. It seemed to ignore the fact that Frank E. Barnes was a member of the firm of S. Barnes & Co. as well as of the firm of Smith, & Barnes; and that therefore the firm of Smith & Barnes could not enjoy the fruits of the fraudulent transactions of S. Barnes & Co. But probably this error did not mislead the jury. The court, in another instruction, gave the jury the law upon this subject correctly.
VII. We have now considered all the points made by counsel for plaintiffs in error, and while we find that the court below committed several errors, we can hardly say that any one of them, if taken separately and singly, would be sufficient to, require a reversal of the judgment rendered by the court below. If the final result reached by the court below had been such as we think it should have been, it is possible and perhaps even probable that we could not say that any of the errors committed by the court below were material. But the result was wrong. The transactions had between Samuel Barnes, and Frank E. Barnes, and Dunscomb & Seaver were, in our opinion, unquestionably fraudulent; and therefore the verdict of the jury and the judgment of the court below should have been in favor of the defendants and against the plaintiffs; and therefore it would seem that some one or more of the erroneous rulings of the court below must have led to this erroneous verdict and judgment; and there *581 fore that some of such erroneous rulings were, either singly or in the aggregate, material. •
The judgment' of the court below will therefore be reversed, and the cause remanded for a new trial. ‘
All the Justices concurring.