J. W. CLOUSTON, *as Sheriff of Ness County*, v. S. F. GRAY.

1. SALE *of Mortgaged Personal Property.* The purchaser from the mortgagor of mortgaged personal property obtains a paramount right to the property when he pays and satisfies the mortgage debt.

2. REPLEVIN — *Verdict not Fatally Defective.* Where the verdict of the jury in an action of replevin is in favor of the plaintiff and against the defendant, and where, if construed in the light of the issues and the evidence, it shows beyond all question that the defendant wrong-

fully detained the property from the plaintiff, the verdict is not fatally defective because it does not expressly state that the property was wrongfully detained by the defendant.

3. JUDGMENT, *not Materially Erroneous.* In an action of replevin, where the defendant retains the property or a portion thereof, the judgment for the plaintiff should be in the alternative for a return of the property held by the defendant, or for its value in case a return could not be had. But where it is shown on the trial that the defendant sold the property and placed it beyond his control and deprived himself of the power to return it, a judgment rendered for the value of the property only will not be held to be materially erroneous.

4. CONTINUANCE—*Discretion of Court.* The granting or refusing a continuance is largely within the discretion of the trial court, and unless it is shown that the trial court abused its discretion in granting or refusing the same, the appellate court will not reverse its rulings; and *held,* in the present case, that the affidavit for the continuance was so defective that it cannot be held that the trial court abused its discretion in refusing to grant the application of the defendant for a continuance based on such affidavit.

*Error from Ness District Court.*

REPLEVIN by *Gray* against *Clouston,* as sheriff of Ness county. Verdict and judgment for plaintiff. The defendant brings error. The material facts are stated in the opinion.

*Rossington, Smith & Dallas,* for plaintiff in error.

*Thomas Berry,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin, brought in the district court of Ness county on March 7, 1888, by S. F. Gray against J. W. Clouston, sheriff of said county, to recover certain personal property previously levied on by Clouston under an execution issued in an action wherein Leander Rokes was the judgment creditor and James Gray was the judgment debtor. The property was levied on as the property of James Gray. The defendant answered on March 9, 1888, by filing a general denial. In May, 1888, the case came up regularly for trial, but was continued to the next term of the court

by the consent of both parties. The history of the case from that time on till February 4, 1889, is not given. On February 4, 1889, the defendant, by his attorney, J. G. Ibach, filed a motion supported by affidavit, which will hereafter be given, asking for a continuance of the case until the next term, which motion was overruled by the court, and on the next day, February 5, 1889, the case was tried before the court and a jury, and the jury rendered a verdict in favor of the plaintiff and against the defendant, which verdict reads as follows:

"We, the jury impaneled and sworn in the above entitled case, do upon our oath find that the plaintiff was entitled to the possession of the property in question at the commencement of this action, and that the value thereof is $208, and that his damages are $395."

Within proper time the defendant filed a motion for a new trial, which was overruled by the court, and he afterward, as plaintiff in error, brought the case to this court for review.

The plaintiff in error, defendant below, urges in his brief five grounds for reversal, which will be considered in their order. But, before proceeding to consider the same, it will perhaps be proper to state the principal facts of the case. On and prior to December 22, 1887, James Gray owned the property in controversy, and on that day he mortgaged the same to the aforesaid Leander Rokes to secure a promissory note for $110, due in 60 days. About February 15, 1888, James Gray sold the property in controversy to S. F. Gray, the defendant in error, plaintiff below, subject to the aforesaid chattel mortgage, which S. F. Gray agreed to pay, and S. F. Gray took the possession of the property. Rokes, the mortgagee, never had the possession of the property. On March 3, 1888, S. F. Gray paid the amount of the aforesaid note and mortgage to Rokes. Afterward, but on the same day, Clouston, as sheriff of the county, levied the aforesaid execution upon the property in controversy; and, on the same day, but afterward, Rokes released and discharged the mortgage upon the records in the office of the register of deeds.

I. The plaintiff in error (defendant below) claims that the

court below erred in giving the following, among other instructions, to the jury:

"When a man buys a piece of property that has a mortgage on it, or buys the man's equity in it, he buys it subject to that mortgage; and when he goes and pays the mortgage off then it is his, and that lets the other man out of it."

We think this instruction states the law correctly. The aforesaid mortgaged property was purchased before the mortgage became due; but, even if it had not been purchased until after the mortgage became due, still this instruction would be correct.

II. It is claimed that the verdict is insufficient, for the reason that it does not show that the property was wrongfully detained by the defendant below. There is no express statement in the verdict to that effect; but taking the issues as presented by the pleadings, and the evidence as introduced on the trial, and construing the verdict in the light of the issues and the evidence, and it shows beyond all question that the defendant below did wrongfully detain the property. The whole question of the wrongful detention of the property by the defendant depended upon the further question: Which of the parties was entitled to the possession of the property? And the jury expressly found in favor of the plaintiff below upon this question, and that the plaintiff below had suffered damages to the amount of $395.

III. It is further claimed by the plaintiff in error, defendant below, that the judgment of the court below was erroneous, for the reason that it was not rendered in the alternative for a return of the property in controversy, or for its value in case a return could not be had, but was rendered only for its value, and for damages and costs. The judgment perhaps ought to have been rendered as the plaintiff in error, defendant below, claims, but still, under the facts of the case, no material or substantial error was committed, and no reversal can be had in any case unless it is affirmatively shown that such an error was committed by the lower court. (*Marix v. Franke*, 9 Kas. 132; *K. P. Rly. Co. v. Little*, 19 id. 267;

*Hamilton v. Miller,* 46 id. 486.) In this case, no order of delivery was ever issued; hence the provisional or interlocutory portion of the action of replevin provided for by the civil code was not resorted to or invoked, but only the permanent and final portion of such remedy was sought; and it has already been held by this court that the action of replevin may be maintained although no order of delivery has been issued in the case prior to the judgment. (*Batchelor v. Walburn,* 23 Kas. 733.) As no order of delivery was issued in this case, the defendant below was permitted to retain the possession of the property, and shortly after the commencement of this action he sold a portion thereof, three horses, and placed the custody thereof beyond his control, and deprived himself of the power to return it to the plaintiff below, even if a judgment for its return had been rendered against him. With respect to the remainder of the property levied on by the defendant and not sold by him, to wit, two mules and a buggy and a set of double harness, he returned the same to the plaintiff after the commencement of this action and before the trial thereof. The jury evidently in their verdict found the value of only that portion of the property which was sold by the defendant, and not that portion of the same which was returned by him to the plaintiff; and the damages which the jury found were evidently such as resulted from the wrongful detention of all the property while the defendant detained it. The value of the whole of the property was more than $600. The judgment of the court below was rendered in accordance with the verdict. We think it is therefore not for the plaintiff in error, defendant below, to complain of the judgment as it was in fact rendered. If it was thought necessary, we could order the judgment to be corrected so as to give the defendant an opportunity to return the property, but it is not thought necessary.

IV. The next alleged error is, that the court below erred in refusing to grant the defendant below a continuance. The affidavit for the continuance reads as follows:

"Comes now J. G. Ibach, who, being first duly sworn, on

oath says, that he is the attorney for defendant herein, and that he cannot safely go into the trial of this cause at this time on account of the absence of one James Gray, a material witness for defendant herein; that he expects to prove by the said witness that the property in controversy herein, and which is sought to be recovered by this plaintiff, was the property of the said absent witness, James Gray, and that this plaintiff never did have any right, title or interest in the same; which facts are true; that the said witness left some time ago, telling affiant that he was going to Oregon on a visit, and would return to Ness county, and would be present when this trial would be heard; and affiant, relying on this promise and believing that he would return, did not have a subpœna issued, for the further reason that he did not know the exact whereabouts of the said witness, and that no notice to take the deposition of the said witness was given for the same reason, although affiant has endeavored to find the exact whereabouts of the said witness; that he was at one time informed that he could be found in Portland, Oregon; that he at once wrote to attorneys living in said city, but they were unable to find him, in order that his deposition could be taken; that he has used all the diligence to find said witness, by inquiring of his whereabouts at home, and by writing to different localities in Oregon where affiant was informed he could be found, but up to this time has been unable to find him; but that if a reasonable amount of time is given his whereabouts can be found, which affiant believes to be in Oregon or Washington Territory, and his evidence procured; and that he cannot prove the said facts by any other witness whose evidence can be procured; that this affidavit is not made for delay, but that justice may be done."

Did the court below commit reversible error by refusing to grant the continuance?

"The granting or refusing a continuance is largely within the discretion of the trial court, and unless it is shown that the trial court has abused its discretion in such a case, the appellate court will not reverse its rulings." (*Payne v. National Bank,* 16 Kas. 148; *Hottenstein v. Conrad,* 9 id. 436; *Davis v. Wilson,* 11 id. 74; *Swenson v. Aultman,* 14 id. 273; *Bliss v. Carlson,* 17 id. 325; *Tucker v. Garner,* 25 id. 454; *Board of Regents v. Linscott,* 30 id. 259.)

The affidavit for the continuance should generally be made by the party asking the continuance. (*Baker v. Knickerbocker,*

25 Kas. 288.)   But where the affidavit is made by some other person, the reason therefor should generally in some manner be shown; as, that the applicant was absent, or that the person making the affidavit was better acquainted with the facts stated therein than the defendant.   In the present case the defendant, Clouston, was a mere nominal party.   Rokes was the real party in interest on the defendant's side.   But the affidavit was not made by either the defendant or Rokes, but was made by the attorney of the defendant.   As to the most of the matters and things set forth in the affidavit, it appears that the attorney was better acquainted with such matters and things than either the defendant or Rokes, and to that extent the affidavit was perfectly right.   The most material portion of the affidavit, however, is that portion which purports to set forth the testimony of the alleged absent witness, James Gray; and with reference to this testimony the affidavit shows as follows:

"That he [the affiant] expects to prove by the said witness that the property in controversy herein, and which is sought to be recovered by this plaintiff, was the property of the said absent witness, James Gray, and that this plaintiff never did have any right, title or interest in the same; which facts are true."

Now, while the affiant probably had some knowledge of what the testimony of the absent witness might be, and may possibly have had a better knowledge of the same than either the defendant or Rokes, yet there is nothing in the affidavit or elsewhere that shows it.   Also, the party applying for a continuance should state the facts in his affidavit which he believes the absent witness would prove, in the same manner as such facts are usually stated in a deposition. (*Payne v. National Bank*, 16 Kas. 147; *Board of Regents v. Linscott*, 30 id. 260.)   This should be done, so that the adverse party might admit the alleged evidence of the absent witness and proceed with the trial. (Civil Code, § 317.)   The facts as stated in a deposition are not the final or ultimate facts which are to be found and determined by the jury, but are the evidential facts,

the probative facts, the facts to be used *merely as evidence* of the final or ultimate facts to be found by the jury. Witnesses in giving their testimony, whether such testimony is to be placed in a deposition or not, are seldom if ever permitted to state the final or ultimate facts, but are permitted to state only such facts as constitute proper evidence of the final or ultimate facts. The facts stated in an affidavit for a continuance as the evidence of an absent witness should be stated in the same manner. The party asking for a continuance must also show by his evidence that he has used due diligence to procure the testimony of the absent witness. Mere promises from the absent witness that he will be present at the trial and testify in the case are not sufficient. (*Educational Assoc'n v. Hitchcock,* 4 Kas. 36; *Campbell v. Blake,* 13 id. 62; *Swenson v. Aultman,* 14 id. 273; *Wilkins v. Moore,* 20 id. 538; *Tucker v. Garner,* 25 id. 454.) Where it becomes necessary to make inquiries with regard to procuring the testimony of the absent witness, the affidavit should show of whom the inquiries were made, and when, and where, and how made. (*Kilmer v. St. L. Ft. S. & W. Rld. Co.,* 37 Kas. 84.)

In the present case, the affiant inquired by writing a letter to attorneys in Portland, Oregon, and also by writing to different localities in Oregon; and the affiant also made inquires "of his whereabouts at home;" *but of whom he made the inquiries,* and when, and where, except "at home," and where this "home" was situated, is not shown. We suppose that the "home" meant was that of the witness, and probably in Ness county; but of whom the inquiries were made at this "home" we cannot guess. The affiant also says that the "witness left *some time ago,* telling affiant that he was going to Oregon on a visit, and would return to Ness county, and would be present when this trial would be heard." Now just when or how long ago this "some time ago" was, is not shown; but why did not the affiant or the defendant or Rokes take the witness's deposition before he left? By what right did the affiant or the defendant or Rokes rely upon this witness's promises? This court has held that parties must not rely

upon the promises of a witness, but must take the legal steps necessary to procure his testimony. (See authorities above cited.) It must also be remembered that in this case the defendant answered and the issues were all made up on March 9, 1888, and the case was continued from time to time until February 4, 1889, nearly a year, when this application for a continuance was made. (*St. L. W. & W. Rld. Co. v. Ransom*, 29 Kas. 303.) Also, it would seem that if in fact James Gray owned the property in controversy, and if the plaintiff did not own it, many witnesses could have been found to testify with regard to the facts. (*Board of Regents v. Linscott*, 30 Kas. 260.)

It would seem that the facts as to who held the possession of the property, who assumed acts of ownership over it, who claimed to own it, etc., could have been shown by other witnesses. It is claimed in the brief of the plaintiff in error, defendant below, that "the defense to this replevin suit was that the property in reality belonged to James Gray, but that, if it had been transferred to S. F. Gray, it was in pursuance of a fraudulent conspiracy to prevent the creditors of James Gray from collecting their debts." It is certainly true that the defendant below had no possible defense and no possible means of defeating the plaintiff's action unless he could show that the sale and transfer of the property from James Gray, the absent witness, to S. F. Gray, the plaintiff in the action, was a sham and a fraud, made with the intent to defeat the creditors of James Gray in the collection of their debts; and if this is what the defendant below or his attorney, who was the affiant in the affidavit made to procure the continuance, or Rokes, wanted to show by the absent witness, then why were not the facts tending to show that the sale was a sham and a fraud set forth in the affidavit? The affiant could have set forth in his affidavit all the facts connected with or concerning the sale or tending to show that it was a sham. He could have set forth in the affidavit that James Gray would have testified, if present at the trial, that he was largely indebted (giving details); that he pretended to sell the property to S. F. Gray for the

purpose of defrauding his creditors; that S. F. Gray had knowledge of such intention; that S. F. Gray did not pay him anything for the property; that James Gray continued in the possession of the property; that S. F. Gray never had possession thereof; that James Gray continued to claim the ownership thereof; that S. F. Gray never claimed to be the owner, but, on the contrary, admitted that he was not the owner and that James Gray was; and that both James Gray and S. F. Gray had full knowledge of all these matters and things; and the affiant should have set forth in his affidavit all these matters and things in greater detail than we have stated them. None of these things were set forth in the affidavit.

It is not to be supposed, however, that James Gray would have testified to any such things, and probably, from the evidence in the case, none of them casting any suspicion upon the *bona fides* of the sale and transfer from James Gray to S. F. Gray were true. If they had been true, some of the neighbors would probably have known something about it; but, so far as any testimony of the neighbors is concerned, their testimony tended to show good faith. If the affiant or the defendant or Rokes intended to rely upon any of the facts above set forth, the affiant should have stated them in his affidavit for a continuance, and should not have set forth, as he did, merely the ultimate fact of ownership, which was really the only disputed ultimate fact in the case, and the only one for the jury to determine. It is not the province of a witness to invade the province of the jury. If the property belonged to the plaintiff he had a right to recover in the action; but if it belonged to James Gray, then the defendant had the right to recover; and that is about all there was for determination in the case. That was the substantial and ultimate fact in issue; and instead of setting it forth in the affidavit as the evidence of the absent witness, the affiant should have set forth the facts or evidence tending to prove this ultimate fact. The affiant might just as well have set forth in his affidavit that he expected to prove by the absent witness his side of the issues in the case, as to set forth what he did. Such is not the way to prove owner-

ship or to prove ultimate facts. (See *Simpson v. Smith*, 27 Kas. 565, 569, 573.)

We think the affidavit for the continuance is defective in several respects, and yet we think it is sufficiently good to have authorized the court below in its discretion to grant a continuance; but taking into consideration the defects in the affidavit, and the fact that the granting or the refusal of a continuance rests largely in the discretion of the district court, we cannot say that such court committed any reversible error by overruling the application for the continuance.

V. It is finally claimed that the court below erred in overruling the defendant's motion for a new trial, but nothing new is presented upon this ground for reversal.

The judgment of the court below will be affirmed.

Horton C. J. concurring.

JOHNSTON, J.: I concur in all the propositions considered, except as to the ruling on the motion for continuance. The affidavit, though not perfect, I think, is in substantial compliance with the statute, and the refusal of the continuance, in my opinion, is prejudicial error.